JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiff-appellant, Lyda Daugherty, appeals the judgments of the trial court granting summary judgment in favor of appellees Great Northern Insurance Company, Allstate Insurance Company and Admiral Insurance Company, and denying her motions for summary judgment against those parties. Appellant further appeals the judgment of the trial court granting Admiral Insurance Company's motion for leave to file an answer. For the following reasons, we affirm.
 {¶ 2} On September 6, 1999, appellant was injured in an auto accident when she was a passenger in a motor vehicle negligently operated by her daughter, Dixie Watson. At the time of the accident, appellant and Ms. Watson resided together and were traveling together on personal business. Ms. Watson was the named insured on an Allstate auto policy which provided medical pay and uninsured/underinsured ("UM/UIM") motorist benefits. Ms. Watson was driving the vehicle insured under the Allstate policy at the time of the accident.
 {¶ 3} Further, at the time of the accident, Ms. Watson was an employee of Oriana House, a corporation that was the named insured on a business auto policy issued by Great Northern. At the time of the accident, Oriana House was also the insured under a commercial general liability policy with Admiral.
 {¶ 4} Appellant initiated this lawsuit on November 21, 2000, when she filed a complaint against Great Northern (named in the complaint as Chubb Insurance Company) and Allstate seeking UM/UIM motorist coverage for injuries she sustained in the September 6, 1999 auto accident. On January 22, 2002, appellant filed an amended complaint adding Fireman's Fund Insurance Company and Admiral as defendants to the action. Fireman's Fund was subsequently voluntarily dismissed by appellant.
 {¶ 5} Great Northern and Allstate filed separate motions for summary judgment. Appellant opposed said motions and filed motions for summary judgment against those parties. The trial court granted Great Northern and Allstate's motions for summary judgment and denied appellant's motions for summary judgment against them.
 {¶ 6} Appellant then filed a motion for default judgment against Admiral, and Admiral sought leave to answer appellant's amended complaint, which appellant opposed. The trial court granted Admiral's motion for leave to answer, and its answer was filed instanter.
 {¶ 7} Appellant filed a motion for summary judgment against Admiral and Admiral filed a motion for summary judgment against appellant. The trial court granted Admiral's motion for summary judgment and denied appellant's motion for summary judgment.
 {¶ 8} We will first consider the trial court's judgment granting leave for Admiral to file its answer, and then consider the judgments of the trial court granting summary judgment in favor of Great Northern, Allstate and Admiral.
 Admiral's Leave to Plead {¶ 9} It is well settled that the decision to grant leave to plead is well within the discretion of the trial court.Patterson v. V M Auto Body (1992), 63 Ohio St.3d 573,589 N.E.2d 1306. The Civil Rules instruct trial courts to exercise their discretion liberally. ("Leave of court shall be freely given when justice so requires.") Civ.R. 15(A).
 {¶ 10} We review the granting of leave to plead only for an abuse of that discretion. Easterling v. American Olean Tile Co.,Inc. (1991), 75 Ohio App.3d 846, 850, 600 N.E.2d 1088. In Statev. Adams (1980), 62 Ohio St.2d 151, 404 N.E.2d 144, the Supreme Court of Ohio set forth the following definition of abuse of discretion: "The term `abuse of discretion' connotes more than error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." Id. at 157-58.
 {¶ 11} Here, Admiral's motion for leave to answer contained the affidavit of its claims manager for claims relative to Oriana House, who averred that although Admiral has a set of procedures to be followed when it receives a complaint and summons, by some mistake, appellant's complaint never reached its claims department.
 {¶ 12} At the time Admiral filed its motion for leave to answer, the other parties to the lawsuit had either been granted summary judgment or voluntarily dismissed by appellant, and the case had been set for a hearing on appellant's motion for default judgment against Admiral. Thus, none of the parties were prejudiced by allowing Admiral to file its answer.
 {¶ 13} Upon review, we cannot find that the trial court abused its discretion in granting Admiral's motion for leave to answer. As such, appellant's third assignment of error is overruled.
 Summary Judgment {¶ 14} An appellate court reviews a trial court's decision on a motion for summary judgment de novo. Grafton v. Ohio EdisonCo., 77 Ohio St.3d 102, 105, 1996-Ohio-336, 671 N.E.2d 241. To obtain a summary judgment under Civ.R. 56(C), the moving party must demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The moving party bears the initial burden of informing the court of the basis of the motion and identifying those portions of the record which support the requested judgment. Vahila v. Hall, 77 Ohio St.3d 421, 430,1997-Ohio-259, 674 N.E.2d 1164. If the moving party discharges its initial burden, the party against whom the motion is made then bears a reciprocal burden of specificity to oppose the motion. Id. See, also, Mitseff v. Wheeler (1998),38 Ohio St.3d 112, 526 N.E.2d 798.
 {¶ 15} Summary judgment is appropriate if, after construing the evidence most favorably for the party against whom the motion is made, reasonable minds can reach only a conclusion that is adverse to that party. Zivich v. Mentor Soccer Club,82 Ohio St.3d 367, 369-370, 1998-Ohio-389, 696 N.E.2d 201; Temple v.Wean United, Inc. (1977), 50 Ohio St.2d 317, 327,364 N.E.2d 267. Any doubts must be resolved in favor of the non-moving party. Murphy v. Reynoldsburg, 65 Ohio St.3d 356, 358-359,1992-Ohio-95, 604 N.E.2d 138.
 Allstate and Great Northern {¶ 16} In regard to Allstate, appellant alleged that she was entitled to UM/UIM motorist coverage under Ms. Watson's auto policy. In regard to Great Northern, appellant alleged that she was entitled to UM/UIM motorist coverage pursuant to Ms. Watson's employment with Oriana House.
 {¶ 17} Allstate and Great Northern denied coverage to appellant on the basis that she was not a passenger in an uninsured vehicle at the time of the accident. Additionally, Great Northern denied coverage to appellant on the ground that the vehicle appellant was in at the time of the accident was insured on a primary basis under another policy.
 {¶ 18} The language in both Allstate and Great Northern's policies is the same statutory language set forth in former R.C.3937.18. Appellant contends that former R.C. 3937.18(J) and (K) are ambiguous, and the trial court erred in holding to the contrary.
 {¶ 19} Former R.C. 3937.18(J)(1) permitted the exclusion of UM/UIM coverage when the injured insured was occupying a vehicle owned by an insured but not covered under the liability portion of the policy (the "other-owned-vehicle exclusion"):
 {¶ 20} "(J) The coverages offered under division (A) of this section or selected in accordance with division (C) of this section may include terms and conditions that preclude coverage for bodily injury or death suffered by an insured under any of the following circumstances:
 {¶ 21} "(1) While the insured is operating or occupying a motor vehicle owned by, furnished to, or available for the regular use of a named insured, a spouse, or a resident relative of a named insured, if the motor vehicle is not specifically identified in the policy under which a claim is made * * *."
 {¶ 22} Former R.C. 3937.18(K)(2) stated that when the tortfeasor who caused the injured insured's loss operated a vehicle owned by an insured, the tortfeasor would not be considered to be uninsured or underinsured:
 {¶ 23} "(K) As used in this section, `uninsured motor vehicle' and `underinsured motor vehicle' do not include any of the following motor vehicles:
 {¶ 24} "(1) A motor vehicle that has applicable liability coverage in the policy under which the uninsured and underinsured motorist coverages are provided;
 {¶ 25} "(2) A motor vehicle owned by, furnished to, or available for the regular use of a named insured, a spouse, or a resident relative of a named insured."
 {¶ 26} Recently, in Kyle v. Buckeye Union Ins. Co.,103 Ohio St.3d 170, 2004-Ohio-4885, 814 N.E.2d 1195, the Supreme Court of Ohio considered whether former R.C. 3937.18(J)(1) and (K)(2), effective September 3, 1997, through October 31, 2001, were in conflict. The Court held that they were not.[1]
 {¶ 27} In particular, the Court held that subsections R.C.3937.18(J) and (K) did not regulate the same thing. The Court noted that "where paragraph (J) states circumstances in which an insured can be denied UM/UIM protection, paragraph (K) articulates when a tortfeasor will not be considered uninsured or underinsured. These provisions may function in the alternative or together." Kyle at 172.
 {¶ 28} In this case, then, as to the Allstate policy, appellant would have had to been insured under the policy and sustain bodily injury caused by an accident arising out of the ownership, maintenance, or use of an uninsured vehicle. Ms. Watson's vehicle was not an uninsured vehicle because it was insured under the liability provisions of the policy. Thus, appellant was not entitled to UM/UIM coverage, as she was not injured as a result of the actions of the driver of an uninsured vehicle.
 {¶ 29} Appellant was also excluded from UM/UIM coverage under the Great Northern policy because the language in the policy excluded Ms. Watson's personal vehicle from the definition of "uninsured motor vehicle." Moreover, appellant was properly denied coverage by Great Northern because the subject vehicle was insured on a primary basis under another policy, which operated as an exclusion under the policy.
 {¶ 30} Further, in regard to Great Northern, the Supreme Court of Ohio in Westfield Ins. Co. v. Galatis,100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, limited its previous ruling in Scott-Ponzer v. Liberty Mut. Fire Ins. Co.,85 Ohio St.3d 660, 1999-Ohio-292, 710 N.E.2d 1116, by restricting the application of UM/UIM coverage issued to a corporation to employees only while they are acting within the course and scope of their employment, unless otherwise specifically agreed. Additionally, the Court held that where a policy of insurance designates a corporation as a named insured, the designation of family members of the named insured as "other insureds" does not extend coverage to a family member of an employee of the corporation, unless that employee is also a named insured.
 {¶ 31} In the within case, there is no dispute that at the time of the accident Ms. Watson was not driving her vehicle while acting within the course and scope of her employment with Oriana House, and there was no agreement otherwise providing coverage.
 {¶ 32} Accordingly, the trial court properly granted summary judgment in favor of Allstate and Great Northern and against appellant, and appellant's first and second assignments of error are without merit.
 Admiral {¶ 33} In her motion for summary judgment against Admiral, appellant relied on the Supreme Court of Ohio case ofScott-Ponzer, supra, in support of her claim that she was insured under the Admiral policy issued to Oriana House. In Admiral's motion for summary judgment against appellant, Admiral argued in part, and the trial court agreed, that appellant's claim against Admiral was barred because appellant failed to comply with the notice provisions of the policy. We also agree.
 {¶ 34} The relevant portion of Admiral's policy provides as follows:
 {¶ 35} "The Company will pay on the behalf of the Insured, those sums which the Insured shall become legally obligated to pay as damages because of: A. Professional Liability; B. Bodily Injury; C. Personal Injury; D. Property damage to which this insurance applies, caused by an occurrence, but only such occurrences for which claims are first made against the insured and reported to the Company during the policy period provided such occurrences are:
 {¶ 36} "(a) subsequent to the Retroactive Date set forth in the Declarations, and
 {¶ 37} "(b) prior to the expiration date set forth in the Declarations provided that:
 {¶ 38} "(1) the insured had no knowledge of any claim or suit or occurrence which might reasonably be expected to result in a claim or suit as of the date of signing the application for this insurance; and
 {¶ 39} "(2) there are no other certificates or policies pursuant to which the Insured is afforded coverage for such claim or suit."
 {¶ 40} The Declarations page of the policy states the following notice:
 {¶ 41} "Except to such extent as may otherwise be provided herein, the coverage of this policy is limited generally to liability for only those claims that are first made against the insured while the policy is in force * * *."
 {¶ 42} The policy provides that the maximum claims extension period is twelve months.
 {¶ 43} Appellant did not oppose Admiral's motion for summary judgment. The evidence before the trial court presented by Admiral demonstrated that appellant did not provide any notice of a potential claim against Admiral until December 28, 2001. Said notice was after the maximum possible claims extension period and, thus, the trial court properly held that appellant's claim against Admiral was barred because of her failure to comply with the notice provisions of the policy. As appellant's potential claim was barred by her failure to report it within the mandatory reporting period pursuant to Admiral's policy, the trial court properly denied her motion for summary judgment.
 {¶ 44} Moreover, Westfield Ins. Co. v. Galatis, supra, limited the ruling in Scott-Ponzer, supra, by restricting the application of UM/UIM coverage issued to a corporation to employees only while they are acting within the course and scope of their employment, unless otherwise specifically agreed. Additionally, the Westfield Court held that where a policy of insurance designates a corporation as a named insured, the designation of family members of the named insured as "other insureds" does not extend coverage to a family member of an employee of the corporation, unless that employee is also a named insured.
 {¶ 45} Here, there is no dispute that at the time of the accident Ms. Watson was not driving her vehicle while acting within the course and scope of her employment with Oriana House, and there was no agreement otherwise providing coverage.
 {¶ 46} Accordingly, the trial court properly granted Admiral's motion for summary judgment and denied appellant's motion for summary judgment. Thus, appellant's fourth assignment of error is overruled.
 Conclusion {¶ 47} The trial court properly granted Admiral's motion for leave to file an answer. Further, the trial court properly granted the motions for summary judgment in favor of Allstate, Great Northern and Admiral, and denied appellant's motions for summary judgment against those parties.
Judgment affirmed.
It is ordered that appellees recover of appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Celebrezze, Jr., P.J., and Kilbane, J. concur.
[1] The Court also recently reversed, on the authority ofKyle supra, the judgment of this court holding that R.C.3937.18(J) and (K) were in conflict. See Ratkosky v. ScottsdaleSurplus Lines, 103 Ohio St.3d ___, 2004-Ohio-5705, 816 N.E.2d 1061.