KYLE ET AL., APPELLANTS, *v.* BUCKEYE UNION INSURANCE COMPANY, APPELLEE.

[Cite as *Kyle v. Buckeye Union Ins. Co.,*
103 Ohio St.3d 170, 2004-Ohio-4885.]

(No. 2003–0474—Submitted January 13, 2004—Decided September 29, 2004.)

O'CONNOR, J.

{¶ 1} Former R.C. 3937.18(J) addressed certain *circumstances* where a policy could exclude uninsured/underinsured motorist ("UM/UIM") coverage for an insured.[1] Former R.C. 3937.18(K) excluded certain *tortfeasors' vehicles* from being considered uninsured or underinsured.[2] Because these paragraphs address different topics, they do not conflict.

{¶ 2} On June 11, 2000, appellant Kathryn Kyle was a passenger in a car driven by her sister, Andrea Kyle. Andrea negligently collided with another vehicle, injuring Kathryn. Andrea and Kathryn were insured under a policy issued to their parents, appellants Steve and Janet Kyle, by Buckeye Union Insurance Company, appellee. This insurance contract provided coverage in the amount of $100,000 per person and $300,000 per accident in both the liability and UM/UIM portions of the policy.

{¶ 3} The insurance covered three automobiles and named Andrea as the rated driver of the car that was involved in the collision. The policy, however, contained a standard clause that excluded liability coverage for an insured for bodily injury sustained by any named insured or resident family member. Kathryn and Andrea were living with their parents at the time of the accident; therefore, Kathryn could not collect under the liability portion of the policy.

{¶ 4} Appellants do not contest the validity of the liability exclusion. Instead, they assert that since Andrea was not entitled to liability coverage, Andrea was an uninsured driver. In accordance with this position, appellants filed a com-

---

1. "The coverages offered under * * * this section * * * may include terms and conditions that preclude coverage * * * under *any of the following circumstances* * * *." (Emphasis added.)

2. "As used in this section, 'uninsured motor vehicle' and 'underinsured motor vehicle' do not include *any of the following motor vehicles* * * *." (Emphasis added.)

plaint for declaratory judgment, seeking to collect under the UM/UIM provisions of the policy after Buckeye Union denied the claim.

{¶ 5} Buckeye Union moved for summary judgment and argued that appellants were precluded from UM/UIM coverage by policy language, consistent with former R.C. 3937.18(K)(2), that excluded from the definition of an uninsured vehicle a motor vehicle owned by any family member and by subsection (K)(2) itself, which made the same exclusion. Appellants countered with their own motion for summary judgment, asserting that because former R.C. 3937.18(J)(1) and (K)(2) conflict, an ambiguity arose, and former R.C. 3937.18(J)(1) was controlling.

{¶ 6} The trial court granted Buckeye Union's motion for summary judgment, concluding that UM/UIM coverage was not available because of the policy language and former R.C. 3937.18(K)(2). The court of appeals affirmed, finding no conflict between the subsections. The appellate court determined that former subsection (J)(1) is limited by former subsection (K)(2) so that former (J)(1) applies only when the insured is driving a vehicle not covered by the policy and the tortfeasor is not the named insured, spouse, or resident relative. The cause is now before the court upon our acceptance of a discretionary appeal.

{¶ 7} We are asked to decide whether former R.C. 3937.18(J)(1) and (K)(2), effective September 3, 1997, through October 31, 2001, and September 21, 2000, respectively, are in conflict and, if so, whether they can be reconciled. For the following reasons, we find that the subsections are not in conflict. Accordingly, we affirm the judgment of the court of appeals.

{¶ 8} On September 3, 1997, the General Assembly enacted Am.Sub.H.B. No. 261, which added several new subsections to R.C. 3937.18, the statute that required the offering of UM/UIM coverage. 147 Ohio Laws, Part II, 2372, 2376. Among those new provisions in the statute were former subsections (J)(1) and (K)(2). These subsections remained unchanged by S.B. No. 57, 148 Ohio Laws, Part IV, 8580, effective November 2, 1999, the version in effect on the inception date of the insurance contract at issue.

{¶ 9} Former subsection (J)(1) permitted the exclusion of UM/UIM coverage when the *injured insured* was occupying a vehicle owned by an insured but not covered under the liability portion of the policy (the "other-owned-vehicle exclusion"):

{¶ 10} "(J) The coverages offered under division (A) of this section or selected in accordance with division (C) of this section may include terms and conditions that preclude coverage for bodily injury or death suffered by an insured under any of the following circumstances:

{¶ 11} "(1) While the insured is operating or occupying a motor vehicle owned by, furnished to, or available for the regular use of a named insured, a spouse, or a resident relative of a named insured, if the motor vehicle is not specifically identified in the policy under which a claim is made * * *." 148 Ohio Laws, Part IV, 8580.

{¶ 12} In this way, while the insurance company could exclude vehicles owned by the insured but not identified in the policy, the insured and insurer could also agree to identify all the owned vehicles. This protected the balance of interests—the insured's interest in coverage and the insurer's interest in receiving premiums for risks covered.

{¶ 13} Former subsection (K)(2) stated that when the *tortfeasor* who caused the injured insured's loss operated a vehicle owned by an insured, the tortfeasor would not be considered to be uninsured or underinsured:

{¶ 14} "(K) As used in this section, 'uninsured motor vehicle' and 'underinsured motor vehicle' do not include any of the following motor vehicles:

{¶ 15} "(1) A motor vehicle that has applicable liability coverage in the policy under which the uninsured and underinsured motorist coverages are provided;

{¶ 16} "(2) A motor vehicle owned by, furnished to, or available for the regular use of a named insured, a spouse, or a resident relative of a named insured."[3] Id.

{¶ 17} Appellants argue that because the exclusion in (J)(1) is permissive while that in (K)(2) is mandatory, R.C. 3937.18 is ambiguous. Paragraphs (J) and (K), however, do not regulate the same thing. Where paragraph (J) states circumstances in which an insured can be denied UM/UIM protection, paragraph (K) articulates when a tortfeasor will not be considered uninsured or underinsured. These provisions may function in the alternative or together. A few hypothetical examples involving Kathryn and Andrea are illustrative.

{¶ 18} First, assume that the driver of the other vehicle involved in the collision had been at fault and Andrea had not been negligent. In this case, (J)(1) would not permit exclusion of coverage because the vehicle Kathryn occupied was identified under the policy. Likewise, (K)(2) would not exclude coverage because the tortfeasor was not operating a vehicle owned by a member of the Kyle household. Thus, under this scenario, Kathryn would be eligible for UM/UIM coverage.

{¶ 19} For the second hypothetical, assume that the other driver had been at fault and Andrea's car had not been insured under the policy. Paragraph (J)(1)

---

3. Although the parties focus upon (K)(2), (K)(1) is more on point because the tortfeasor (Andrea) drove a vehicle that was insured under the policy in question. Nevertheless, the more broadly worded (K)(2) also precludes Andrea's vehicle from being considered uninsured or underinsured. Our reasoning holds true for both provisions.

would permit the exclusion of coverage for Kathryn's injuries because Andrea's car was owned by the Kyle family but was not insured under the policy. Paragraph (K)(2), however, would not require exclusion of coverage because a third party driving his own car was responsible for the collision. Thus, under R.C. 3937.18, the contracting parties may choose to cover or not cover this scenario.

{¶ 20} For the third hypothetical, assume that Andrea had been at fault and Andrea's car had not been insured under the policy. Here, as in the second hypothetical, (J)(1) would permit the exclusion of coverage for Kathryn's injuries. In this scenario, (K)(2) would preclude Andrea from being considered uninsured or underinsured because the tortfeasor occupied a vehicle owned by the Kyle family.

{¶ 21} As these examples show, former R.C. 3937.18(J)(1) and (K)(2) are complementary. Paragraph (J) addressed certain *circumstances* in which a policy could exclude UM/UIM coverage for an insured. Paragraph (K) excluded certain *tortfeasors' vehicles* from being considered uninsured or underinsured. Because these paragraphs address different topics, they do not conflict.

{¶ 22} Applying these sections to the facts at hand, we again see that they do not conflict and that (K)(2) operates to exclude UM/UIM coverage for Kathryn. Andrea was at fault, and her vehicle—occupied by Kathryn—was insured under the same policy from which Kathryn seeks UM/UIM coverage. Here, (J)(1) is inapplicable because the vehicle Kathryn occupied was insured under the policy, but (K)(2) excludes coverage.

{¶ 23} The trial court and the court of appeals properly ruled that under these circumstances, R.C. 3937.18(K)(2) precludes UM/UIM coverage for Kathryn Kyle.

Judgment affirmed.

MOYER, C.J., and LUNDBERG STRATTON, J., concur.

O'DONNELL, J., concurs in judgment only.

RESNICK, F.E. SWEENEY and PFEIFER, JJ., dissent.

---

FRANCIS E. SWEENEY, SR., J., dissenting.

{¶ 24} I respectfully dissent. I disagree with the majority's determination that former R.C. 3937.18(J)(1) and (K)(2) address different topics and thus are not conflicting. Instead, I would hold that the statutory language is ambiguous and directly conflicting. Nevertheless, after construing the statute to give effect to the General Assembly's intent, I believe that the subsections can be reconciled and that uninsured motorist coverage is available to appellants under their

insurance policy as written. Accordingly, I would reverse the judgment of the court of appeals.

{¶ 25} The primary goal in statutory interpretation is to determine the intent of the General Assembly in enacting a statute and then giving effect to that intent. *Clark v. Scarpelli* (2001), 91 Ohio St.3d 271, 274, 744 N.E.2d 719. It is our duty to give effect to the words used in the statute, not to delete words or insert words not used. *Cleveland Elec. Illum. Co. v. Cleveland* (1988), 37 Ohio St.3d 50, 524 N.E.2d 441, paragraph three of the syllabus. If the words of a statute are unambiguous, our job is easy: we merely apply the law as written, without a need to interpret. *State ex rel. Savarese v. Buckeye Local School Dist. Bd. of Edn.* (1996), 74 Ohio St.3d 543, 545, 660 N.E.2d 463.

{¶ 26} If the words of a statute are ambiguous, we must construe the statutory language to give effect to the General Assembly's intent. *Clark,* 91 Ohio St.3d at 274, 744 N.E.2d 719. A statute is ambiguous when its language is subject to more than one reasonable interpretation. Id. In order to carry out the legislature's intent, we must harmonize apparent inconsistencies whenever possible. *Johnson's Markets, Inc. v. New Carlisle Dept. of Health* (1991), 58 Ohio St.3d 28, 35, 567 N.E.2d 1018. In determining legislative intent when faced with an ambiguous statute, we may consider several factors such as circumstances under which the statute was enacted, the objective of the statute, and the consequences of a particular construction. R.C. 1.49; *Bailey v. Republic Engineered Steels, Inc.* (2001), 91 Ohio St.3d 38, 40, 741 N.E.2d 121. Finally, guiding us in our interpretation is the long-standing recognition that R.C. 3937.18 is remedial legislation and that we must therefore construe the statute liberally to give effect to its legislative purpose. *Moore v. State Auto. Mut. Ins. Co.* (2000), 88 Ohio St.3d 27, 31, 723 N.E.2d 97.

{¶ 27} For more than 30 years, this court has made clear that the purpose behind R.C. 3937.18 is to protect persons from losses that, because of the tortfeasor's lack of liability coverage, would otherwise go uncompensated. *Abate v. Pioneer Mut. Cas. Co.* (1970), 22 Ohio St.2d 161, 165, 51 O.O.2d 229, 258 N.E.2d 429. The majority, by refusing to find coverage, undermines this laudatory goal.

{¶ 28} Moreover, the circumstances under which the statute was enacted show that when both subdivisions were first introduced by 1997 H.B. No. 261, the objective was to allow exclusion from coverage for occupants of vehicles owned by an insured, but only if those vehicles were not identified in the policy. In this way, while the insurance company could exclude vehicles owned by the insured but not identified in the policy, the insured and insurer could also agree to identify all the family vehicles if they so chose. This protected the balance of interests—the insured's interest in coverage and the insurer's interest in receiving premiums for risks covered. This is what happened here. Appellants

specifically identified in the policy the Honda Prelude, the car involved in the collision, and they paid a premium for UM/UIM coverage that applied to this vehicle.

{¶ 29} The next consideration is the consequence of a particular construction. By finding that the provisions do not conflict, the majority is ignoring the fact that, plainly read, former (J)(1) allows for UM/UIM coverage for other owned vehicles specifically identified in the policy. Yet former (K)(2) stated that all other owned vehicles were, by definition, not uninsured or underinsured vehicles. When both subsections of R.C. 3937.18 are read together, they are conflicting because former subsection (J)(1) permits coverage if the vehicle is identified in the policy while former subsection (K)(2) specifically states that even if a vehicle is identified in the policy, it can never be an uninsured vehicle for purposes of UM/UIM coverage.

{¶ 30} The Fourth District Court of Appeals in *Morris v. United Ohio Ins. Co.,* Ross App. No. 02CA2653, 2003-Ohio-1708, 2003 WL 1756416, had the opportunity to consider whether the statute was ambiguous. In an attempt to reconcile the subsections, that court reasoned:

{¶ 31} "Initially, we acknowledge that the owned but uninsured exclusion of R.C. 3937.18(J)(1) is *intended* to limit coverage and not create it. After all, its avowed purpose is to allow policies to 'preclude coverage.' But, in interpreting the language actually contained in the statute (and the industry form policies for that matter) we cannot avoid the only logical conclusion one can draw from the following language: 'if the motor vehicle is not specifically identified in the policy under which a claim is made.' The *only* logical inference one can draw from that language is that the (J)(1) exclusion from coverage is limited to vehicles that the claimant owns but has not covered under the policy. If the vehicle *is* listed in the uninsured motorist coverage, the exclusion cannot apply by its own terms, e.g., the claimant has purchased uninsured motorist coverage for that vehicle. A claimant in that situation is not attempting to stack coverage or 'get something for nothing.' She is simply attempting to claim coverage for which she has paid a premium. We read (J)(1) to mean that you have no coverage for a vehicle you own unless it is listed in the policy * * *.

{¶ 32} "Then we turn to the definitional provision of R.C. 3937.18(K)(2) and find that it says in essence—your vehicle can never be an uninsured motor vehicle even if you list it and pay a premium for it. The fact that (K)(2) precludes uninsured motorist coverage in an accident where the claimant, a spouse, or resident family member owns the vehicle, renders the (J)(1) promise of coverage for a listed vehicle illusory in nature. Do these provisions, when read in conjunction, mean that the consumer is purchasing uninsured motorist coverage for accidents only when they are not caused by the claimant's own vehicle?

When read on its own, (K)(2) certainly seems to relay that message. But, when we add (J)(1) to the mix, we are hard pressed to glean that meaning. In short, we find that (J)(1) and (K)(2) are so ambiguous as to be unenforceable when read together. * * * Apparently, the legislature itself agrees as they have subsequently repealed (K)(2) and left (J)(1) intact. * * * Therefore, we look to the statute's overriding purpose of providing uninsured motorist coverage and disregard or eliminate subsection (K)(2), while giving effect to subsection (J)(1)." (Emphasis sic.) Id. at ¶ 18–19. See, also, *Ratkosky v. Scottsdale Surplus Lines Ins. Co.*, Cuyahoga App. No. 81519, 2003-Ohio-2868, 2003 WL 21291024.

{¶ 33} The *Morris* opinion adheres to statutory construction principles and makes several valid points. I find it persuasive. Therefore, I believe that former R.C. 3937.18(J)(1) and (K)(2) do not cover different circumstances as interpreted by the majority. Instead, these statutory provisions are conflicting. Yet they can both be given effect and harmonized when former subsection (K)(2) is interpreted as applying only to vehicles not identified in the insurance policy. As Kathryn Kyle was injured while a passenger in a vehicle that was specifically identified in the policy, she is entitled to uninsured motorist coverage. This liberal construction is consistent with the purpose of R.C. 3937.18, which is to provide protection for persons injured by tortfeasors who lack sufficient insurance. I would reverse the judgment of the court of appeals and remand the cause to the trial court for further proceedings.

RESNICK and PFEIFER, JJ., concur in the foregoing dissenting opinion.

---

PFEIFER, J., dissenting.

{¶ 34} Assume that a person bought insurance to protect his or her family in the event of an automobile accident. Further assume that when that accident occurred, the insurance company explained, "Yes, you have insurance, and yes, it covers your family, and yes, you paid all applicable premiums, but because you caused the accident (however unintentionally), your family is excluded from liability coverage." Your natural response would be "But that's why I bought insurance." To continue this hypothetical, the insurance company would respond, "We were so concerned that you or another named insured on your policy would intentionally injure someone in your family that we specifically excluded your family from coverage." Insurance companies apparently have a exceedingly low opinion of their own policy holders, the citizens of Ohio.

{¶ 35} Fortunately, the General Assembly has amended the statute that, under this court's holding, allows such an anomalous situation to occur. Unfortunately, people injured during the approximately three-year window in which R.C. 3937.18(K)(2) was in effect are left without the liability insurance coverage that they thought they had purchased to protect their families. For over three years,

every child buckled in a mandatory child-safety restraint and protected by the latest safety designs of our automobile manufacturers was left at critical risk by a gap in basic insurance coverage that this court today finds valid.

{¶ 36} The General Assembly has corrected its mistake as to future policy holders. Justice Sweeney's dissent persuasively explains why R.C. 3937.18(J)(1) and (K)(2) are ambiguous. It is a shame that this court is unwilling to adopt that rationale to correct the General Assembly's mistake as to policy holders injured between September 3, 1997, through September 21, 2000. I dissent and join Justice Sweeney's dissent.

RESNICK and F.E. SWEENEY, JJ., concur in the foregoing dissenting opinion.

———

Connelly, Jackson & Collier, L.L.P., Steven P. Collier and Anthony E. Turley, for appellants.

Keener, Doucher, Curley & Patterson, L.L.P., and Thomas J. Keener, for appellee.