BURNETT, APPELLEE, *v.* MOTORISTS MUTUAL
INSURANCE COMPANY, APPELLANT, ET AL.

[Cite as *Burnett v. Motorists Mut. Ins. Co.,*
118 Ohio St.3d 493, 2008-Ohio-2751.]

(Nos. 2007–0954 and 2007–1176—Submitted March 12, 2008—Decided June 17, 2008.)

**O'CONNOR, J.**

{¶ 1} Defendant-appellant, Motorists Mutual Insurance Company ("Motorists"), appeals from a decision of the Eleventh District Court of Appeals holding former R.C. 3937.18(K)(2) unconstitutional for violating the Equal Protection Clauses of the Ohio and United States Constitutions when that statute is read in conjunction with former R.C. 3937.18(J)(1). For the reasons that follow, based largely upon our decision in *Kyle v. Buckeye Union Ins. Co.*, 103 Ohio St.3d 170, 2004-Ohio-4885, 814 N.E.2d 1195, we reverse the judgment of the court of appeals and determine that the application of former R.C. 3937.18(K)(2) to the circumstances of this case does not violate principles of equal protection.

I

{¶ 2} The parties have stipulated to the essential facts. Plaintiff-appellee, Elizabeth Burnett, was injured in a motor vehicle accident on February 13, 2000, while a passenger in a motor vehicle owned and operated by her husband, Albert R. Burnett. The negligence of Albert R. Burnett directly and proximately caused the accident.

{¶ 3} On the date of the accident, Albert was the named insured under an insurance policy issued by Motorists. The Burnetts resided together at the same address, and Elizabeth therefore was a "family member" of Albert as that term was defined in the insurance policy. Albert's vehicle was available for his regular use and was listed as an insured vehicle under the policy.

{¶ 4} Motorists denied liability coverage to Albert for the claims asserted by Elizabeth on the basis of the intrafamily exclusion in the liability portion of the policy. That denial of liability coverage is not at issue in this appeal. Motorists also denied Elizabeth's claim for uninsured-motorists coverage for damages arising out of the accident on the basis of the intrafamily exclusion in the uninsured/underinsured-motorist ("UM") portion of the policy. The UM policy provided that "uninsured motor vehicle" does not include any vehicle "[o]wned by or furnished or available for the regular use of you or any family member." This wording substantially tracked the language of former R.C. 3937.18(K)(2) as that statute existed at the time of the accident.

{¶ 5} On March 1, 2001, Elizabeth filed a complaint in the Trumbull County Court of Common Pleas seeking a declaration that Motorists was required to

provide UM coverage for injuries she sustained in the accident. On July 14, 2003, the trial court held that Elizabeth was entitled to UM coverage based on its reasoning that former R.C. 3937.18(J)(1) and former R.C. 3937.18(K)(2) "are ambiguous and irreconcilable thus rendering any insurance policy provisions based on [former R.C.] 3937.19(K)(2) unenforceable."

{¶ 6} Motorists appealed that decision, and in *Burnett v. Motorists Mut. Ins. Cos.*, 11th Dist. No. 2003–T–0101, 2005-Ohio-4333, 2005 WL 2002282 (*"Burnett I"*), the Eleventh District Court of Appeals reversed on the authority of our decision in *Kyle*, 103 Ohio St.3d 170, 2004-Ohio-4885, 814 N.E.2d 1195. In *Kyle*, we held that the two former statutes were not in conflict but instead were complementary and that former R.C. 3937.18(K)(2)'s exclusion was valid and enforceable to preclude UM coverage in this situation. Id. at ¶ 21–23.

{¶ 7} The court of appeals stated in *Burnett I*, "Based upon the *Kyle* decision, it is clear that [Elizabeth Burnett] is precluded from coverage under the uninsured provisions of the policy issued by Motorists to Mr. Burnett. Hence, the trial court's decision must be reversed." 2005-Ohio-4333, 2005 WL 2002282, ¶ 27. After entering judgment in favor of Motorists "on the *Kyle* issue," the court of appeals remanded the cause for further proceedings, instructing the trial court to address the remaining issues Elizabeth had raised that the trial court had not considered, "such as the constitutionality" of the R.C. 3937.18(K)(2) exclusion. Id. at ¶ 31.

{¶ 8} On remand the trial court issued a judgment entry in favor of Motorists, summarily ruling with no discussion of any specific issue that there was no merit to Elizabeth's additional arguments that the exclusion authorized by former R.C. 3937.18(K)(2) violated public policy and was unconstitutional on three different grounds.

{¶ 9} The Eleventh District reversed the judgment of the trial court upon its determination that former R.C. 3937.18(K)(2), when considered in conjunction with former R.C. 3937.18(J)(1), violated equal protection.[1] 172 Ohio App.3d 455, 2007-Ohio-1639, 875 N.E.2d 642 (*"Burnett II"*). The court of appeals stated that former R.C. 3937.18(K)(2) "is unconstitutional because it impermissibly classifies individuals based upon a familial relation, so that injured persons related to the

---

1. {¶ a} In her appeal, Elizabeth Burnett raised four different challenges to former R.C. 3937.18(K)(2), asserting that the statute (1) violated public policy, (2) was unconstitutional under the Contracts Clause of Section 28, Article II, of the Ohio Constitution, (3) was unconstitutional under the Due Process Clauses of Section 16, Article I of the Ohio Constitution and the Fourteenth Amendment to the United States Constitution, and (4) was unconstitutional under the Equal Protection Clauses of Section 2, Article I of the Ohio Constitution and the Fourteenth Amendment to the United States Constitution.

{¶ b} The court of appeals addressed only the equal protection challenge asserted by Elizabeth Burnett and did not mention the other challenges.

tortfeasor are precluded from recovery while injured persons not related or even nonresident relatives can pursue recovery under the policy." Id. at ¶ 23.

{¶ 10} Motorists moved the court of appeals to certify a conflict. That court recognized its decision as being in conflict with the decision of the Fourth District Court of Appeals in *Morris v. United Ohio Ins. Co.*, 160 Ohio App.3d 663, 2005-Ohio-2025, 828 N.E.2d 653, and certified a conflict on the following issue for our review: "[Does] former R.C. 3937.18(K)(2) when read in conjunction with [former] R.C. 3937.18(J)(1) violate the Equal Protection Clauses of the Ohio and United States Constitutions since it creates an arbitrary and illogical classification based on household status that has a disparate and unfair effect since it precludes coverage for injured individuals who may not recover solely because they are related to and live in the household of the insured?"

{¶ 11} We agreed to review the certified issue, 114 Ohio St.3d 1504, 2007-Ohio-4285, 872 N.E.2d 948, and also accepted Motorists' discretionary appeal, 114 Ohio St.3d 1507, 2007-Ohio-4285, 872 N.E.2d 950, which involves the same issue.

## II

{¶ 12} As did *Kyle*, this case implicates two former statutory subsections, R.C. 3937.18(J)(1) and 3937.18(K)(2), pertaining to UM coverage that were in effect on the date of the motor vehicle accident and that applied to the policy period at issue. Both subsections became effective on September 3, 1997. Am.Sub.H.B. No. 261, 147 Ohio Laws, Part II, 2372, 2376. These two subsections were unchanged by S.B. No. 57, 148 Ohio Laws, Part IV, 8580, effective November 2, 1999. Because Sub.S.B. No. 267, 148 Ohio Laws, Part V, 11380, 11383, effective September 21, 2000, repealed former R.C. 3937.18(K)(2), our analysis, as did *Kyle*'s, applies solely to UM cases governed by the law in effect from September 3, 1997, through September 20, 2000. We stress that our holding in this case has no application to cases governed by subsequent versions of R.C. 3937.18.[2]

{¶ 13} Former R.C. 3937.18(J)(1), as applicable to this case, provided:

{¶ 14} "(J) The coverages offered under division (A) of this section or selected in accordance with division (C) of this section may include terms and conditions that preclude coverage for bodily injury or death suffered by an insured under any of the following circumstances:

{¶ 15} "(1) While the insured is operating or occupying a motor vehicle owned by, furnished to, or available for the regular use of a named insured, a spouse, or

---

2. R.C. 3937.18 was substantially revised in Am.Sub.S.B. No. 97, 149 Ohio Laws, Part I, 779, 779–786, effective October 31, 2001. See, generally, *Snyder v. Am. Family Ins. Co.*, 114 Ohio St.3d 239, 2007-Ohio-4004, 871 N.E.2d 574, which interpreted the current (Senate Bill 97) version of R.C. 3937.18, for an extensive discussion of the statutory history.

a resident relative of a named insured, if the motor vehicle is not specifically identified in the policy under which a claim is made * * *." 148 Ohio Laws, Part IV, 8580.

{¶ 16} Former R.C. 3937.18(K)(2) provided:

{¶ 17} "(K) As used in this section, 'uninsured motor vehicle' and 'underinsured motor vehicle' do not include any of the following motor vehicles:

{¶ 18} " * * *

{¶ 19} "(2) A motor vehicle owned by, furnished to, or available for the regular use of a named insured, a spouse, or a resident relative of a named insured." Id.

{¶ 20} In *Kyle,* we considered whether the former subsections were in conflict and, if so, whether they could be reconciled. 103 Ohio St.3d 170, 2004-Ohio-4885, 814 N.E.2d 1195, ¶ 7. As to former R.C. 3937.18(J)(1), we observed:

{¶ 21} "Former subsection (J)(1) permitted the exclusion of UM/UIM coverage when the *injured insured* was occupying a vehicle owned by an insured but not covered under the liability portion of the policy (the 'other-owned-vehicle exclusion').

{¶ 22} " * * *

{¶ 23} " * * * [W]hile the insurance company could exclude vehicles owned by the insured but not identified in the policy, the insured and insurer could also agree to identify all the owned vehicles. This protected the balance of interests—the insured's interest in coverage and the insurer's interest in receiving premiums for risks covered." (Emphasis sic.) Id. at ¶ 9, 12.

{¶ 24} As to former R.C. 3937.18(K)(2), we observed that that subsection "stated that when the *tortfeasor* who caused the injured insured's loss operated a vehicle owned by an insured, the tortfeasor would not be considered to be uninsured or underinsured." (Emphasis sic.) Id. at ¶ 13.

{¶ 25} We then declared: "Appellants argue that because the exclusion in (J)(1) is permissive while that in (K)(2) is mandatory, R.C. 3937.18 is ambiguous. Paragraphs (J) and (K), however, do not regulate the same thing. Where paragraph (J) states circumstances in which an insured can be denied UM/UIM protection, paragraph (K) articulates when a tortfeasor will not be considered uninsured or underinsured. These provisions may function in the alternative or together." Id. at ¶ 17.

{¶ 26} We provided some hypothetical examples to illustrate the subsections' application. Id. at ¶ 18–20. We then reasoned, "As these examples show, former R.C. 3937.18(J)(1) and (K)(2) are complementary. Paragraph (J) addresses certain *circumstances* in which a policy could exclude UM/UIM coverage for an insured. Paragraph (K) excluded certain *tortfeasors' vehicles* from being considered uninsured or underinsured. Because these paragraphs address different

topics, they do not conflict." (Emphasis sic.) Id. at ¶ 21. We concluded that under the circumstances, R.C. 3937.18(K)(2) precluded coverage. Id. at ¶ 23.

{¶ 27} The facts of this case are on point in all relevant respects with those of *Kyle.* Therefore, the Eleventh District in *Burnett I* properly ruled that *Kyle* fully controlled the resolution of the specific issue addressed in that appeal. Although *Kyle* did not involve a challenge to the constitutionality of former R.C. 3937.18(K)(2), our discussion in *Kyle,* as we will explain below, is much more pertinent to the issue of this case than the court of appeals in *Burnett II* recognized.

### III

{¶ 28} All statutes enjoy a presumption of constitutionality. Before a court declares a statute unconstitutional, the court must be convinced " 'beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible.' " *Arbino v. Johnson & Johnson,* 116 Ohio St.3d 468, 2007-Ohio-6948, 880 N.E.2d 420, ¶ 25, quoting *State ex rel. Dickman v. Defenbacher* (1955), 164 Ohio St. 142, 57 O.O. 134, 128 N.E.2d 59, paragraph one of the syllabus.

{¶ 29} The Equal Protection Clause, Section 2, Article I of the Ohio Constitution, provides, "All political power is inherent in the people. Government is instituted for their equal protection and benefit * * *." The Fourteenth Amendment to the United States Constitution provides, "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

{¶ 30} "Simply stated, the Equal Protection Clauses require that individuals be treated in a manner similar to others in like circumstances." *McCrone v. Bank One Corp.,* 107 Ohio St.3d 272, 2005-Ohio-6505, 839 N.E.2d 1, ¶ 6. See *Park Corp. v. Brook Park,* 102 Ohio St.3d 166, 2004-Ohio-2237, 807 N.E.2d 913, ¶ 19, quoting *Nordlinger v. Hahn* (1992), 505 U.S. 1, 10, 112 S.Ct. 2326, 120 L.Ed.2d 1 (" 'The Equal Protection Clause does not forbid classifications. It simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike' "). "The limitations placed upon governmental action by the federal and state Equal Protection Clauses are essentially the same." *McCrone,* 107 Ohio St.3d 272, 2005-Ohio-6505, 839 N.E.2d 1, at ¶ 7.

{¶ 31} Under traditional equal protection analysis, " '[a] statutory classification which involves neither a suspect class nor a fundamental right does not violate the Equal Protection Clause of the Ohio or United States Constitutions [sic] if it bears a rational relationship to a legitimate governmental interest.' " Id. at ¶ 8, quoting *Menefee v. Queen City Metro* (1990), 49 Ohio St.3d 27, 29, 550 N.E.2d

181. However, the preliminary step in conducting an equal protection analysis regarding a particular statute is to examine the classifications created by the statute in question. *McCrone*, 107 Ohio St.3d 272, 2005-Ohio-6505, 839 N.E.2d 1, at ¶ 11; *Conley v. Shearer* (1992), 64 Ohio St.3d 284, 290, 595 N.E.2d 862. Furthermore, "where there is no classification, there is no discrimination which would offend the Equal Protection Clauses." Id.

{¶ 32} The conclusion reached by the court of appeals in *Burnett II* that an equal protection violation is present in the situation here directly conflicts with the holding of the Fourth District in *Morris*, which involved a situation both factually and legally on point in all relevant respects with this case. In *Morris*, Wanda Morris, a passenger in a motor home driven by her husband in February 2000, was injured when her husband negligently caused an accident, and she sought recovery under the UM coverage of the policy. The Morrises owned the vehicle, and the insurer denied UM coverage under a policy exclusion identical to the exclusion in the UM coverage at issue in the case sub judice.[3] 160 Ohio App.3d 663, 2005-Ohio-2025, 828 N.E.2d 653, ¶ 4–7.

{¶ 33} In addressing the argument that former R.C. 3937.18(K)(2) violated equal protection by impermissibly discriminating against claimants who are related to the tortfeasor, the *Morris* court stated:

{¶ 34} "Under R.C. 3937.18(K)(2), it doesn't matter who the tortfeasor is. The focus of R.C. 3937.18(K)(2) is the vehicle the tortfeasor was driving at the time of the accident. If the tortfeasor was driving a vehicle owned by, furnished to, or available for the regular use of a named insured or his or her family members, then the vehicle will not be considered uninsured or underinsured. See *Kyle*, 103 Ohio St.3d 170, 814 N.E.2d 1195, ¶ 13. This is true regardless of whether the claimant is related to the tortfeasor.

{¶ 35} "An example will help illustrate our point. Assume that Mrs. Morris's friend was driving the motor home at the time of the accident. Mrs. Morris's initial attempts to recover liability benefits are unsuccessful, so she files a claim for uninsured motorist coverage under her policy with United Ohio. Under these circumstances, R.C. 3937.18(K)(2) will preclude coverage since the tortfeasor, Mrs. Morris's friend, was driving a vehicle owned by a named insured.

{¶ 36} "As this example demonstrates, the tortfeasor need not be related to the claimant in order for R.C. 3937.18(K)(2) to apply. It is [the] tortfeasor's vehicle, not his identity, that determines whether (K)(2) applies. If the tortfeasor is driving a vehicle owned by, furnished to, or available for the regular use of a

---

3. Wanda Morris also sought recovery under the liability coverage of the policy, but the insurer denied coverage based on an exclusion in that part of the policy, and she did not further pursue that claim. 160 Ohio App.3d 663, 2005-Ohio-2025, 828 N.E.2d 653, ¶ 6.

named insured or his or her family members, then (K)(2) will preclude coverage. If, on the other hand, the tortfeasor is driving a different vehicle (a vehicle that is not owned by a named insured or a family member of a named insured), then (K)(2) will not preclude coverage. Accordingly, (K)(2) differentiates between insureds injured by a tortfeasor driving a vehicle owned by, furnished to, or available for the regular use of a named insured (or his or her family members) and insureds injured by a tortfeasor driving a different vehicle." *Morris*, 160 Ohio App.3d 663, 2005-Ohio-2025, 828 N.E.2d 653, ¶ 15–17.

{¶ 37} The *Morris* court concluded, at ¶ 18, "[W]here there is no classification, there is no discrimination that would offend the federal or state Equal Protection Clauses. See *Conley v. Shearer* (1992), 64 Ohio St.3d 284, 290, 595 N.E.2d 862. In the absence of a sufficient legal classification, an equal protection analysis is not required. Id. In light of the fact that the appellant has failed to identify the appropriate class, we need not construct one for her in order to proceed with the analysis."

{¶ 38} We fully agree with *Morris*'s resolution of this issue. That court's analysis properly interpreted the effect of our decision in *Kyle* on the certified issue and reached the only correct result that can be reached in view of *Kyle*.

{¶ 39} The Eleventh District's reasoning in *Burnett II* on the certified issue, on the other hand, patently misinterprets *Kyle*. The Eleventh District's conclusion that former subsection (K)(2) created a classification based on household status is fundamentally flawed for a number of reasons. Most obviously, it fails to heed our determinations in *Kyle* that former subsection (K)(2)'s focus is on "the *tortfeasor*," that the statute "articulates when a tortfeasor will not be considered uninsured or underinsured," and most important, that "[p]aragraph (K) excluded certain *tortfeasors' vehicles* from being considered uninsured or underinsured." (Emphasis sic.) *Kyle*, 103 Ohio St.3d 170, 2004-Ohio-4885, 814 N.E.2d 1195, ¶ 13, 17, and 21. The Fourth District in *Morris* properly applied this essential reasoning from *Kyle* to conclude that the focus of former R.C. 3937.18(K)(2) was on the vehicle the tortfeasor was driving at the time of the accident. See *Morris*, 160 Ohio App.3d 663, 2005-Ohio-2025, 828 N.E.2d 653, at ¶ 17.

{¶ 40} The Eleventh District in *Burnett II* reasoned that former R.C. 3937.18(J)(1) legitimately required an insured to list a vehicle in order to have UM coverage on the vehicle but that "provision (K)(2) takes away this coverage based on the identity of the driver, not the identity of the vehicle. This creates an arbitrary and illogical distinction." 172 Ohio App.3d 455, 2007-Ohio-1639, 875 N.E.2d 642, at ¶ 26. However, we rejected a variant of this reasoning in *Kyle*, where we noted at various points in our analysis that former R.C. 3937.18(J)(1) and 3937.18(K)(2) "address different topics," "are not in conflict," "do not regulate the same thing," "may function in the alternative or together," and "are comple-

mentary." 103 Ohio St.3d 170, 2004-Ohio-4885, 814 N.E.2d 1195, at ¶¶ 1, 7, 17, 21, 22. Based on these considerations, the Eleventh District unquestionably erred in determining the role that former subsection (J)(1) plays in the equal protection inquiry.

{¶ 41} Furthermore, although the Eleventh District's phrasing of the certified conflict concludes by incorporating the statement that former R.C. 3937.18(K)(2) precludes coverage because injured individuals "may not recover solely because they are related to and live in the household of the insured," *Kyle* demonstrated that the statute does not operate in that way. The example set forth by the Fourth District in *Morris*, 160 Ohio App.3d 663, 2005-Ohio-2025, 828 N.E.2d 653, at ¶ 16, indicates the validity of the proper approach and also illustrates why the Eleventh District's reasoning in *Burnett II* is defective.

{¶ 42} *Kyle* explains that former subsection (K)(2) did not draw an impermissible classification based on household status. Because the classifications identified by the Eleventh District (injured persons related to the tortfeasor and living in the household of the insured versus all other injured persons) have no statutory basis, there is no actual classification of persons in Elizabeth Burnett's situation being drawn by which principles of equal protection could be violated.

{¶ 43} If, as here, a challenged statute does not actually create a classification that treats similarly situated individuals under like circumstances differently, there can be no discrimination to offend equal protection. *Conley*, 64 Ohio St.3d at 290, 595 N.E.2d 862. Consequently, as the Fourth District recognized in *Morris*, the equal protection analysis stops at this point, and further consideration is foreclosed. The Eleventh District's interpretation of former subsection (K)(2) in *Burnett II* is wholly inconsistent with *Kyle* and must be reversed.

## IV

{¶ 44} In light of the foregoing analysis, we answer the certified question in the negative. The application of former R.C. 3937.18(K)(2) does not violate the Equal Protection Clauses of the Ohio and United States Constitutions and does not create an arbitrary and illogical classification based on household status that has a disparate and unfair effect by precluding coverage for injured persons who may not recover solely because they are related to and live in the household of the insured. We reverse the judgment of the court of appeals on the certified issue and remand this matter to the appellate court to consider the remaining issues raised by Elizabeth Burnett that its decision failed to address.

Judgment reversed
and cause remanded.

MOYER, C.J., and LUNDBERG STRATTON, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

PFEIFER, J., dissents.

_____

**PFEIFER, J., dissenting.**

{¶ 45} The good news is that the damage done by R.C. 3937.18(K)(2) was limited, the statute having been repealed after three years. The bad news is that this court finds nothing constitutionally offensive about that short-lived statute's unequal treatment of Ohioans. Thus, the repeal of R.C. 3937.18(K)(2) did not come soon enough for Elizabeth Burnett. She is left to suffer the consequences of the General Assembly's dark view of the citizens of Ohio as persons who willingly injure family members by purposely causing automobile accidents in order to collect insurance payouts.

{¶ 46} The majority does not face the task of determining whether the General Assembly had a rational basis for instituting former R.C. 3937.18(K)(2), because the majority finds that the statute did not create classifications. But here are the classifications: A family member cannot purchase an insurance policy that could provide her uninsured-motorist coverage for injuries caused by another family member's negligence; any other citizen *can* purchase an insurance policy that would provide uninsured-motorist coverage for that same driver's negligence.

{¶ 47} For instance, Passengers A and B are riding in a car driven by Driver. Driver is the spouse of Passenger A. Passenger B is unrelated to Driver. Former R.C. 3937.18(K)(2) states:

{¶ 48} "(K) As used in this section, 'uninsured motor vehicle' and 'underinsured motor vehicle' do not include any of the following motor vehicles:

{¶ 49} " * * *

{¶ 50} "(2) A motor vehicle owned by, furnished to, or available for the regular use of a named insured, a spouse, or a resident relative of a named insured." 148 Ohio Laws, Part IV, 8580.

{¶ 51} Passenger A can purchase no policy that would provide uninsured-motorist coverage for injuries she suffered because of the negligence of Driver. As long as her spouse was driving the vehicle, any vehicle, she could not be covered by an uninsured-motorist policy, pursuant to R.C. 3937.18(K)(2). Passenger B, on the other hand, could have purchased a policy that would have provided such coverage. Two persons, both passengers, treated differently by law.

{¶ 52} Whether the General Assembly had a rational basis for imposing such unequal treatment is an issue the majority decided it need not reach. Good for the majority. It does not have to attribute rationality to the General Assembly's

belief in the boogeyman of intrafamilial collusive lawsuits. It does not have to identify an outbreak in Ohio of Munchausen's Syndrome by Auto. And it does not have to find a rational basis for the General Assembly's prohibiting Ohioans from fully protecting their family members. When we purchase insurance, we think we are protecting the people dearest to us. It is the very people former R.C. 3937.18(K)(2) excludes from coverage that insurance purchasers believe they are paying to protect. I would hold that there was no rational basis for the General Assembly's exclusion of those people from uninsured/underinsured-motorist coverage based upon their family relationship.

---

Anzellotti, Sperling, Pazol & Small Co., L.P.A., James L. Pazol, Robert D. Vizmeg, and Raymond J. Tisone, for appellee.

Day Ketterer, Ltd., Merle D. Evans III, and Jude B. Streb, for appellant.

Paul W. Flowers Co., L.P.A., and Paul W. Flowers; and the DiCello Firm and Robert F. DiCello, urging affirmance for amicus curiae, Ohio Association for Justice.