[Cite as *Dunson v. Home-Owners Ins. Co.*, 2010-Ohio-1928.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HANCOCK COUNTY

JEANETTE L. DUNSON,                          CASE NO. 5-09-37

   PLAINTIFF-APPELLEE,
   CROSS-APPELLANT,

 v.

HOME-OWNERS INSURANCE COMPANY,          O P I N I O N

   DEFENDANT-APPELLANT,
   CROSS-APPELLEE.

**Appeal from Hancock County Common Pleas Court
Trial Court No. 2006 CV 608**

**Judgment Reversed and Cause Remanded**

**Date of Decision:  May 3, 2010**

APPEARANCES:

   *Gordon D. Arnold,* **for Appellant**

   *Dennis M. Fitzgerald,* **for Appellee**

**WILLAMOWSKI, P.J.,**

{¶1} The Defendant-Appellant, Home-Owners Insurance Company ("HOIC"), appeals the judgment of the Hancock County Court of Common Pleas granting Plaintiff-Appellee Jeanette L. Dunson's motion for declaratory judgment and denying HOIC's motion for summary judgment. The trial court found that Jeanette Dunson ("Dunson" or "Mrs. Dunson") was entitled to uninsured motorist coverage for an accident caused by her husband under an insurance policy issued by HOIC. For the reasons set forth below, the judgment is reversed.

{¶2} On October 8, 2004, Dunson was severely injured in an automobile accident while she was a passenger in a car driven by her husband, Larry Dunson, which car left the road and overturned twice before coming to rest on its top. Larry Dunson's negligence was the proximate cause of the automobile accident.

{¶3} The parties agreed that the Dunsons had entered into a contract of automobile liability insurance with HOIC on August 1, 2004, and that their policy number 46-017-548-02 was in effect at the time of the accident. As a result of the accident, Dunson made a claim against her husband for bodily injury and liability coverage under the HOIC policy. HOIC paid the medical payments claim but denied liability coverage because the policy had an exclusion which stated that it did not provide liability coverage for bodily injury to family members. Because HOIC denied coverage, Dunson concluded that her husband was driving an

uninsured automobile and filed an uninsured motorist (or, "UM") claim under the section of the HOIC policy that provided UM coverage. HOIC denied the UM claim stating that another policy provision also excluded uninsured motorist coverage for family members.

{¶4} Based on these undisputed facts, both sides moved for declaratory relief/summary judgment, asking the trial court to interpret the terms of the insurance policy, apply Ohio law, and declare whether or not Dunson was entitled to pursue an intra-family uninsured motorist claim.

{¶5} HOIC's motion for summary judgment argued that the policy was clear and unambiguous, and that it did not provide for intra-family UM coverage. According to undisputed terms of the policy, family members were excluded from liability coverage. The policy also excluded UM coverage for anyone who was excluded from liability coverage. Therefore, HOIC reasoned, family members were excluded from UM coverage. The relevant portions of the HOIC policy are:

> **Section II – Liability Coverage**
> 1. **COVERAGE**
> a. **Liability Coverage – Bodily Injury and Property Damage**
>    **We will pay damages for bodily injury and property damage for which you become legally responsible because of or arising out of the ownership, maintenance or use of your automobile \*\*\*.**

HOIC's liability coverage was subject to several exclusions, including the following intra-family exclusion that was included in the policy as form/endorsement number 79550(6-92):

**EXCLUSION OF INJURY TO FAMILY MEMBERS**

**It is agreed:**

**Section II – Liability Coverage does not apply to bodily injury to you or any relative.**

{¶6} Based on the above, Larry Dunson was excluded from liability coverage when he caused bodily injury to his wife and Mrs. Dunson does not dispute this exclusion. The issue in this case involves the "Uninsured Motorists Coverage," form 79302(3-02), which contains the following exclusion ("UM exclusion"):

**EXCLUSIONS**

**Uninsured Motorist Coverage does not apply: \*\*\***

**c.     to bodily injury caused by an automobile operated by a person excluded from coverage for bodily injury liability under the policy.**

HOIC concluded that its policy clearly and simply stated that where liability coverage was denied, uninsured motorist coverage was also denied.

{¶7} In response, Dunson argued that the language of the policy was ambiguous, that the exclusion was susceptible to more than one interpretation, and therefore, the policy must be construed in favor of providing coverage to the insured. Dunson also argued that even if the UM exclusion barred intra-family claims, she would still be entitled to coverage because: HOIC failed to cite the exact exclusion in its denial letter; HOIC failed to raise the exclusion as an affirmative defense in its pleadings; the policy language "caused by an

automobile" was ambiguous; and, the statute allowing the exclusion of intra-family UM claims was unconstitutional.[1]

{¶8} In order to demonstrate that there was ambiguity in the policy language, Dunson outlined the detailed legislative and judicial history of the intra-family UM exclusion in Ohio since 1992. Dunson presented a time-line showing how the many modifications in the law through the years correlated with changes, or lack of changes, in the language HOIC used in its exclusions during this time period.

{¶9} Ohio traditionally recognized intra-family immunity prior to the Ohio Supreme Court's ruling in 1985 abolishing interspousal tort immunity.[2] During the ensuing years, insurance companies responded to the resulting intra-familial claims by inserting intra-family or household exclusions into the liability and uninsured-underinsured motorists' provisions of their policies. Various decisions by the Ohio Supreme Court, and ensuing modifications to the insurance statutes by the Ohio General Assembly, resulted in numerous modifications to uninsured-underinsured motorist benefits and the statute governing UM coverage,

---

[1] At the time Dunson set forth this argument, the Ohio Supreme Court's decision in *Burnett v. Motorists Mut. Ins. Co.,* 118 Ohio St.3d 493, 2008-Ohio-2751, 890 N.E.2d 307, was still pending. Based upon that decision, Dunson has abandoned this argument.
[2] See *Shearer v. Shearer* (1985), 18 Ohio St.3d 94, 480 N.E.2d 388, at the syllabus (also allowing a child a cause of action against a parent for injuries caused by parental negligence).

R.C. 3937.18.[3] At various times through the years intra-family insurance coverage was mandated, and at other times, intra-family exclusions were permitted.

{¶10} The trial court reviewed the parties' opposing motions, analyzed the insurance contract, and made the following findings:

> **The Court's review of the exclusion clearly indicates that it is less than a model of clarity. The better practice would be to state specifically that family members are excluded from UM coverage as opposed to incorporating this provision by way of reference to the liability policy. In fact, other insurance policies have much more clearly defined intra-family exclusions. *** However, consideration of the policy language solely in the abstract establishes that it is not so ambiguous or misleading to necessitate further interpretation.**

(Sept. 3, 2008 Decision, pp. 9-10.) Then, after finding that the policy was "not so ambiguous or misleading to necessitate further interpretation," the trial court went on to further analyze and interpret the contract. The trial court noted that Dunson offered "an alternative theory" to support her position and that, "[c]onsidered in proper historical context, [Dunson] contends that the clause in question is not an intra-family exclusion, or at the very least, creates an ambiguity ***." (Id, p.10.) After considering Dunson's "alternative theory" and reviewing her "demonstrative exhibits" concerning the "history of family member exclusions," the trial court concluded that there were "four possible conclusions" as to why HOIC used the particular language it did in its exclusions. As a result, the trial court felt it was

---

[3] See *Snyder v. Amer. Family Ins. Co.*, 114 Ohio St.3d 239, 2007-Ohio-4004, 871 N.E.2d 574, ¶¶ 13-28, summarizing the evolution of Ohio's UM law and regulations over the past two decades.

"compelled to find that ambiguity exists." Therefore, in interpreting the policy in a light most favorable to the insured, the trial court determined that the exclusion did not bar Dunson from pursuing uninsured motorist benefits against her policy.

{¶11} Based on the trial court's decision, the parties reached an agreement on damages, and the trial court filed a final judgment on October 16, 2009, entering judgment in favor of Dunson in the amount of five hundred thousand dollars (the policy maximum), conditioned upon a final determination of the coverage issues through the appeals process. HOIC filed a timely appeal. Dunson filed a cross-appeal concerning a discovery ruling that we shall address after we review the following two assignments of error raised by HOIC:

### First Assignment of Error

**The trial court erred in sustaining [Dunson's] Motion for Declaratory Judgment and overruling [HOIC's] Motion for Summary Judgment.**

### Second Assignment of Error

**The trial court erred in looking for the intent of the parties by considering extrinsic evidence when the language of the written contract is clear.**

{¶12} The parties agree that there are no relevant issues of material fact and the decision granting and denying the parties' motions for declaratory judgment and summary judgment depends upon the interpretation of the insurance contract. Insurance policies are contracts and their interpretation is a matter of law for the court. *City of Sharonville v. Am. Employers Ins. Co.,* 109 Ohio St.3d 186,

187, 2006-Ohio-2180, 846 N.E.2d 833, ¶6, citing *Alexander v. Buckeye Pipe Line Co.* (1978)*,* 53 Ohio St.2d 241, 374 N.E.2d 146, at paragraph one of the syllabus. Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Civ.R. 56(c); *Horton v. Harwick Chemical Corp.*, 73 Ohio St.3d 679, 686-87, 1995-Ohio-286, 653 N.E.2d 1196. An appellate court reviews a summary judgment order de novo. *Hillyer v. State Farm Mut. Auto. Ins. Co.* (1999), 131 Ohio App.3d 172, 175, 722 N.E.2d 108. This review of a trial court's summary judgment decision is done independently and without any deference to the trial court. *Ohio Govt. Risk Mgt. Plan v. Harrison*, 115 Ohio St.3d 241, 2007-Ohio-4948, 874 N.E.2d 1155, ¶5

{¶13} Insurance coverage is determined by reasonably construing the contract "in conformity with the intention of the parties as gathered from the ordinary and commonly understood meaning of the language employed." *King v. Nationwide Ins. Co.* (1988), 35 Ohio St.3d 208, 211, 519 N.E.2d 1380. Contract terms are to be given their plain and ordinary meaning. *Gomolka v. State Auto. Mut. Ins. Co*. (1982), 70 Ohio St.2d 166, 167-68, 436 N.E.2d 1347. "Where provisions of a contract of insurance are reasonably susceptible to more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured." *King v. Nationwide Ins. Co.*, supra, at the syllabus (citations omitted).

{¶14} However, where the intent of the parties to a contract is evident from the clear and unambiguous language used, a court must not read into the contract a meaning not contemplated or placed there by an act of the parties to the contract. *Gomolka*, 70 Ohio St.2d at 168. "Although, as a rule, a policy of insurance that is reasonably open to different interpretations will be construed most favorably for the insured, that rule will not be applied so as to provide an unreasonable interpretation of the words of the policy." *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, ¶14, quoting *Morfoot v. Stake* (1963), 174 Ohio St. 506, 23 O.O.2d 144, 190 N.E.2d 573, paragraph one of the syllabus.

{¶15} Because both of HOIC's assignments of error are related, we will address the issues together. HOIC claims that its policy clearly and unambiguously excludes Larry Dunson from both intra-family liability coverage and UM coverage. HOIC maintains that the language of the exclusion is consistent with Ohio law and its intent is evident within the four corners of the policy as a whole. Therefore, the trial court is not permitted to look beyond the writing itself and consider extrinsic evidence in order to create an ambiguity that is not present in the terms and conditions of the contract.

{¶16} Dunson, however, argues that HOIC's UM exclusionary clause is ambiguous, especially when examined in conjunction with the legislative history of the UM statute and the drafting history of HOIC's exclusionary clauses. The

parties agree that the current UM law applicable to this case is governed by R.C. 3937.18 as revised in October 2001 by SB 97. The revisions to R.C. 3937.18 that were enacted by SB 97 again permit insurance companies to include exclusionary and limiting provisions in UM policies for inter-family claims.[4]

{¶17} After reviewing the insurance policy and the record, we find that the language of HOIC's UM exclusionary clause is clear and unambiguous and its intent is evident within the four corners of the policy. The HOIC policy excludes family members from liability coverage utilizing form 79550, an exclusion that Dunson did not find ambiguous. Then, HOIC simply incorporates that exclusion by reference into its UM exclusion by stating that UM coverage does not apply to injuries caused by a person excluded from liability coverage under the policy. This exclusion is broadly worded to include all of the liability exclusions. Family members are excluded from UM coverage because they are excluded from liability coverage. Although the wording in the UM exclusion is general, that does not make it ambiguous.

{¶18} The First District Court of Appeals arrived at the same conclusion when called upon to interpret the identical UM exclusionary language in a similar

---

[4]Some of the reasons given in 2001 S 97, § 3, eff. 10-30-01, to express the intent of the General Assembly in enacting this legislation, were to accomplish the following concerning uninsured motorist coverage, underinsured motorist coverage, or both: eliminate any requirement of the mandatory offer of such coverage; eliminate the possibility of such coverage being implied as a matter of law; provide statutory authority for the inclusion of exclusionary or limiting provisions in such coverage; and to supersede the holdings of the Ohio Supreme Court in several prior insurance coverage cases, along with several previous enactments of the General Assembly.

case, *Kelly v. Auto-Owners Ins. Co.*, 1st Dist. No. C-050450, 2006-Ohio-3599. Auto-Owners Insurance denied UM coverage based upon the policy's intra-family exclusion when the husband was struck by an automobile driven by his wife.[5] Id. Auto-Owners Insurance is affiliated with the Appellant Home-Owners Insurance, and both companies use the same policy forms with the same language. The First District Court of Appeals found that "the UM exclusion specifically adopted the bodily-injury liability coverage exclusions. Admittedly section (3)(c) did not cross-reference by number the exclusions in the bodily-injury liability portion of the policy. But the reference to the exclusions was clear and did not create an ambiguity in this case." Id., at ¶18.

{¶19} Like Dunson, the plaintiff in *Kelly* also argued that the UM exclusion in section (3)(c) should apply only to injuries caused by a *named* person who was *specifically* excluded from coverage. The Court disagreed.

> **We recognize that this "specifically named person" provision does exist in some UM insurance policies and that the legislature used this exclusion as one example of an acceptable exclusion in a UM policy. But the current UM coverage statute unequivocally states that the specified exclusions are not the only acceptable exclusions.**

Id., at ¶19.

---

[5] Dunson attempts to distinguish *Kelly* from the case before us now because the injured spouse in *Kelly* was a pedestrian at the time he was hit by the automobile driven by his wife, whereas in this case, Dunson was a passenger. We do not find this to be a material difference that would affect the coverage or the application of this case law to the interpretation of the insurance policy.

{¶20} When called upon to interpret a contract, the court's essential function is to effectuate the intent of the parties. Generally, such intent is presumed to reside in the language used to employ the agreement. *Kelly v. Medical Insurance Co.* (1987), 31 Ohio St.3d 130, 509 N.E.2d 411, at the syllabus. Dunson, however, argued that it was necessary to go outside of the policy to determine HOIC's intent when it drafted the UM exclusion.

{¶21} Considering the policy as whole, we find HOIC's intent to exclude intra-family UM claims is evident from its exclusion of intra-family liability claims. There would be no logical purpose to exclude intra-family claims under the liability portion of the policy if it then allowed them under the UM portion of the policy. The Court in *Kelly* also discussed this.

> **Importantly, this interpretation renders the UM coverage consistent with the bodily-injury liability coverage with regard to the intrafamilial-tort exclusion. If this injury were not also excluded under the UM coverage, the exclusion would be meaningless because family members could plot to recover UM benefits in lieu of bodily-injury damages.**

*Kelly*, at ¶20. See, also, *Robson v. Allstate*, 5th Dist. No. 01CAE03007, 2001 WL 1096212 (holding that insurance policy's "family tort immunity language" logically applied to the UM portion of the policy because "[i]f the policy excluded coverage [for a family tort], why would the policy give it back via the uninsured motorist portion of the policy?").

{¶22} Contractual language is ambiguous only if its meaning cannot be determined from the four corners of the agreement, or if the language is susceptible of two or more *reasonable* interpretations. *Covington v. Lucia*, 151 Ohio App.3d 409, 2003-Ohio-346, 784 N.E.2d 186, ¶18 (citations omitted.); *Tuohy v. Taylor*, 3d Dist. No. 4-06-23, 2007-Ohio-3597, ¶13. The UM exclusion in the case before us was not ambiguous, and the intent behind the exclusion was evident within the clear language of the policy. Courts may not use extrinsic evidence to create an ambiguity. *Covington v. Lucia,* supra; *Hacker v. Dickman* (1996), 75 Ohio St.3d 118, 119, 2006-Ohio-98, 661 N.E.2d 1005. The trial court in the case before us also concluded that HOIC's exclusionary clause was not necessarily ambiguous or misleading, but then it erroneously proceeded to consider Dunson's "alternate theories" which were used to create an ambiguity. There was no reason to utilize extrinsic evidence to interpret this policy.

{¶23} Furthermore, we do not find that Dunson's "historical analysis" led to an accurate conclusion. Although the language in HOIC's UM exclusion did not change through various modifications of Ohio's UM law, Dunson failed to consider that the scope of the UM exclusion was dependent upon the entire policy and whatever was excluded from liability coverage at any particular point in time. In this case, the UM exclusion did not allow intra-family claims because form 79550 excluded *liability* coverage for family members. If this form, or some other intra-family liability exclusion, was not in the policy, then the UM exclusion

would not necessarily bar intra-family UM claims. Dunson's analysis did not take this into consideration nor did it mention whether or not form 79550 was included in the previous versions of HOIC's policies that were analyzed.

{¶24} Therefore, we find that the trial court erred when it utilized extrinsic evidence in order to create ambiguity in the policy's intra-family UM exclusion.

{¶25} Dunson also argues that even if the insurance policy excluded intra-family UM coverage, she should prevail because of the other issues raised in her motion. Those issues were all addressed in the trial court's decision and found to be without merit. We agree with the trial court's conclusion.

{¶26} First, Dunson contends that she was entitled to summary judgment because HOIC's agents failed to cite the exact exclusion denying coverage in its denial letter.[6] However, as the trial court noted, the reservation of rights in the correspondence from HOIC's representative, together with the sequence of letters between counsel, clearly demonstrated that Dunson was aware of the factual basis upon which HOIC denied coverage.

{¶27} Next, Dunson maintains that HOIC waived its right to enforce the UM exclusion because HOIC failed to assert it as an affirmative defense in its answer. Civ.R. 8(C) provides a non-exclusive list of affirmative defenses that must be raised in the pleadings, for example, res judicata, statute of limitations,

---

[6] As noted by the trial court, Dunson did not cite any Ohio case law to support her argument.

discharge in bankruptcy, assumption of risk, duress, fraud and "any other matter constituting an avoidance or affirmative defense." Insurance policies' exclusionary clauses are not listed among these affirmative defenses. While we recognize that this is a non-exhaustive listing, we fail to see how HOIC's intra-family UM exclusion would qualify as an affirmative defense under the facts of this case.

{¶28} "An affirmative defense is a new matter which, assuming the complaint to be true, constitutes a defense to it. (Citations omitted.) 'An affirmative defense is any defensive matter in the nature of a confession and avoidance. It admits that the plaintiff has a claim (the 'confession') but asserts some legal reason why the plaintiff cannot have any recovery on that claim (the 'avoidance').' (Citations omitted.)." *State ex rel. The Plain Dealer Publishing Co. v. Cleveland* (1996), 75 Ohio St.3d 31, 33, 661 N.E.2d 187. See, also, *Red Head Brass, Inc. v. Buckeye Union Ins. Co.* (1999), 135 Ohio App.3d 616, 623-624, 735 N.E.2d 48, 53 (Insurance company's failure to raise its policy-based defenses as an affirmative defense did not constitute waiver; they were not an admission coupled with a theory of avoidance, and the company's denials in its answer were sufficient to put the insured on notice that its extent of duty under the policy would be an issue in the case); BLACK'S LAW DICTIONARY (9th Ed. Rev. 2009), p. 482 (An affirmative defense is a defendant's assertion of facts and arguments that, if

true, will defeat the plaintiff's claim, even if all the allegations in the complaint are true.)

{¶29} HOIC did not seek to "avoid" the coverage for some reason outside the confines of the policy, but instead sought to enforce the very language of the insurance contract that Dunson put at issue in her amended complaint. Furthermore, the UM exclusion was not a new fact or set of facts, and HOIC did not acknowledge that Dunson's assertions concerning policy coverages were true. Whether or not coverage existed under the insurance policy, based upon the interpretation of the UM exclusion, constituted the very heart of the controversy between the parties. Dunson set forth her claims in the complaint and HOIC asserted its denials in its answer. This was not a matter that required HOIC to assert an affirmative defense.

{¶30} Lastly, Dunson attempts to create an ambiguity by claiming that the UM policy language excluding "bodily injury caused by an automobile operated by a person ***" was ambiguous because "caused by an automobile" was susceptible to more than one meaning. Dunson contends that the exclusion is only applicable when a pedestrian is "directly struck" by an automobile. While Dunson's attempts to find ambiguity in the policy are creative, her contrived reading is not a reasonable interpretation of the exclusion when the policy is viewed as a whole, including the explanation of coverages and the applicable definitions. As stated above, courts are not required to construe a policy in such a

way that would represent an *unreasonable* interpretation of the words. See *Westfield Ins. Co. v. Galatis*, supra.

{¶31} For all of the above reasons, HOIC's assignments of error are sustained. We will now address Dunson's cross-appeal.

## Cross Assignment of Error

**The trial court erred in granting HOIC's Motion for a Protective Order and Limiting Discovery on the policy drafting history.**

{¶32} During discovery, Dunson sought to depose the HOIC company representative to obtain additional information concerning the meaning and interpretation of the contested policy language. HOIC moved for a protective order, contending that the deposition would not lead to admissible evidence because the interpretation of an insurance policy was a matter of law, and extrinsic evidence would not be admissible because the policy was clear and unambiguous on its face. The trial court granted HOIC's motion because Dunson failed to point out what specific ambiguities existed in the insurance policy at issue which would permit the development of extrinsic evidence.

{¶33} Our decision above renders this assignment of error moot. The policy was not ambiguous and, therefore, the court had no need to resort to extrinsic evidence. Dunson's cross-assignment of error is overruled.

{¶34} Having found error prejudicial to the appellant herein, in the particulars assigned and argued, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.

*Judgment Reversed and Cause Remanded*

**ROGERS and SHAW, J.J., concur.**

**/jnc**