LARRY A. JONES, SR., J.:
{¶ 1} Defendant-appellant, Michael Williamson ("Williamson"), appeals the trial court's denial of his postconviction application for DNA testing. We affirm.
I. Facts and Procedural Background
{¶ 2} In 2001, Williamson was convicted of 12 counts of rape in violation of R.C. 2907.02 and was sentenced to 12 consecutive life terms. This court affirmed his convictions in State v. Williamson , 8th Dist. Cuyahoga No. 80982, 2002-Ohio-6503, 2002 WL 31667650.
{¶ 3} On November 23, 2016, Williamson filed an application for DNA testing pursuant to R.C. 2953.71 through 2953.81. On December 9, 2016 the trial court denied Williamson's motion as "untimely filed." Williamson appealed and this court reversed, finding that the trial court's denial of Williamson's DNA testing application as "untimely" constituted an insufficient order. State v. Williamson , 8th Dist. Cuyahoga No. 105320, 2017-Ohio-4192, 2017 WL 2482846. We remanded the case for the trial court to comply with R.C. 2953.71 through 2953.81 and make a ruling on his application for DNA testing. Id. at ¶ 5.
{¶ 4} On October 12, 2017, the trial court issued an opinion and order denying Williamson's application. The trial court *326 noted that Williamson was requesting testing of a "cup and flooring" related to the victim's testimony that she spit his semen on both items. The court found, however, that no physical evidence was presented at his trial that could be tested for DNA; the court stated that the only physical evidence collected and tested by the state was the victim's bedding, which tested negative for semen and blood. The court found that Williamson's application could be denied per R.C. 2953.74(C)(1). The court further found that results from the DNA testing would not be outcome determinative because the presence of another person's DNA would not have exonerated Williamson. The victim alleged that Williamson raped her over 40 times; he was convicted of 12 of those incidents, and the cup and flooring only related to one incident. Thus, DNA exoneration for the alleged evidence on the cup and flooring would not exonerate him on all counts.
{¶ 5} Williamson filed a timely pro se notice of appeal and has assigned six assignments of error for our review:
I. The dispositive opinion factual finding that "the physical cup itself and samples from the floor are unavailable for DNA testing at this point" was not made in accordance with statutory requirements and therefore fails.
II. The dispositive trial court legal conclusion that "the trial of (Neiswonger's[1] or) another person's DNA (in or on the cup or immediate flooring) would have * * * not * * * completely * * * exonerated (the) appellant (with an) exclusion result," established a standard for the requirement (as to DNA application rejection) or 2953.74(B)(4) contrary to Ohio law and thus fails.
III. The dispositive opinion mixed finding of fact and conclusion of law that "the cup and floor relate to only one incident (out of the victim's allegations that the appellant raped her in forty-plus incidents) thus (even if some other person's, and not the appellant's DNA, was found in or on the cup or in the immediate flooring, that) "evidence would not exonerate Williamson for all 12 counts with an exclusion result and thus the requirements of 2953.71(C)(4) as defined by 2953.71(L) were not met" misstates the law as to 2953.74(C)(4) and thus fails.
IV. The opinion and order erroneously ignores Williamson's application made pursuant to R.C. 2953.74(B).
V. The opinion and order erroneously fails to analyze the requirements of the U.S. and Ohio Constitutions impacted in R.C. 2953.71 - 2953.81, mandating the DNA testing requested.
VI. The R.C. 2953.71 - 2953.81 statutory scheme is unconstitutional under the due process and equal protection clauses of the 14th Amendment; and under the due process and equal protection clauses of the Ohio Constitution.
II. Law and Analysis
{¶ 6} Assignments of error one through five will be combined for review because they discuss the same issue: Williamson claims that the trial court erred in denying his application for DNA testing.
{¶ 7} Postconviction DNA testing for eligible inmates is addressed in R.C. 2953.71 through 2953.81. Detailed grounds for accepting or rejecting applications can be found in R.C. 2953.74. State v. Widmer , 12th Dist. Warren No. CA2012-02-008, 2013-Ohio-62, 2013 WL 142041, ¶ 114. R.C. 2953.74(A) provides that a trial court "has the discretion, on a case-by-case basis" to accept or reject an eligible inmate's *327 application for DNA testing. Thus, we review the trial court's decision to deny Williamson's application for an abuse of discretion. An abuse of discretion is more than an error of law or judgment, but instead connotes that the trial court's decision was unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore , 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). When applying the abuse of discretion standard, an appellate court may not merely substitute its judgment for that of the trial court. Berk v. Mathews , 53 Ohio St.3d 161, 169, 559 N.E.2d 1301 (1990).
{¶ 8} R.C. 2953.74(C) provides, in part, that the court may accept an application for DNA testing only if:
(1) the court determines pursuant to section 2953.75 of the Revised Code that biological material was collected from the crime scene or the victim of the offense for which the inmate is an eligible inmate and is requesting DNA testing and that the parent sample of that biological material against which a sample from the inmate can be compared still exists at that point in time.
R.C. 2953.75(A) requires the court to direct the prosecuting attorney to canvass any and all law enforcement authorities that might have retained the biological material to be tested to determine "whether the parent sample of that biological material still exists at that point in time."
{¶ 9} In this case, the state reported that no parent sample existed, and submitted a report in accordance with R.C. 2953.75(B).[2] The state reported that it conducted a search in July 2017 and found that the Cleveland Police Department collected evidence relevant to the crime in April 2001; the physical evidence had tested negative for semen and blood. The physical evidence consisted of the victim's clothing, her bedding and blankets, a towel, and a doll's jacket. The state also reviewed relevant lab reports, police reports, and trial testimony. The police did not take a cup or flooring into evidence in April 2001 or anything thereafter; thus, the state was unable to locate a cup or flooring.
{¶ 10} Therefore, no parent sample existed on which a DNA test could be performed and the court denied Williamson's application on that finding, pursuant to R.C. 2953.74(C)(1).
{¶ 11} Further, the results of the requested DNA material would not be "outcome determinative." R.C. 2953.74(C)(4) provides that a trial court may only accept the application if the exclusion result will be "outcome determinative." As the trial court found, even if DNA from another person was found, Williamson would not be completely exonerated because the victim testified he raped her over 40 times. Williamson's identity was not at issue; he denied raping the victim and was convicted of 12 counts of rape.
{¶ 12} In State v. Madden , 10th Dist. Franklin No. 08AP-172, 2008-Ohio-2653, 2008 WL 2252553, the court affirmed the trial court's denial of an application for DNA testing when the allegation with regard to the item of DNA only concerned a single incident, but the victim had testified that appellant sexually abused her on multiple occasions over a two-year period. The court found that an "exclusion result" from the DNA testing the appellant requested would not be "outcome determinative." Id. at ¶ 11.
*328 {¶ 13} As mentioned, in the present case, the victim testified that Williamson, a family member, raped her more than 40 times over an extended period of time. The cup and the flooring that Williamson desires to be tested only relate to a single incident. Thus, as in Madden , an "exclusion result" from the DNA testing on these items, even if they could be located, would not be outcome determinative.
{¶ 14} Therefore, the trial court did not abuse its discretion in denying Williamson's application for DNA testing. The first through fifth assignments of error are overruled.
{¶ 15} In the sixth assignment of error, Williamson claims that R.C. 2953.71 through 2953.81 are unconstitutional. We disagree.
{¶ 16} All statutes are presumed constitutional. State v. Thompkins , 75 Ohio St.3d 558, 560, 664 N.E.2d 926 (1996). "The party challenging the statutes bears the burden of proving otherwise." Id. Moreover, "[t]he legislation being questioned will not be invalidated unless the challenger establishes that it is unconstitutional beyond a reasonable doubt." Id. , citing Arnold v. Cleveland , 67 Ohio St.3d 35, 38-39, 616 N.E.2d 163 (1993).
{¶ 17} The United States Supreme Court has held that there is no substantive due process right to obtain evidence for DNA testing in a postconviction setting. Dist. Attorney's Office for Third Judicial Dist. v. Osborne , 557 U.S. 52, 68, 129 S.Ct. 2308, 174 L.Ed.2d 38 (2009). Although Williamson's argument with regard to the alleged due process violation is difficult to decipher, we note that, in Ohio, "the plain language of the current DNA testing statutes does not include within their scope the testing of a victim's DNA." State v. Widmer , 12th Dist. Warren No. CA2012-02-008, 2013-Ohio-62, 2013 WL 142041, ¶ 142. Nor, common sense dictates, does the plain language of the current DNA testing statutes include within their scope the testing of physical items not within the state's custody and control. See R.C. 2953.74(C)(1).
{¶ 18} Williamson contends that the terms "exclusion" and "exclusion result" are unconstitutionally vague in relation to the term "outcome determinative."
{¶ 19} In order to survive a void-for-vagueness challenge, "the statute must be written so that a person of common intelligence is able to determine what conduct is prohibited, and secondly, the statute must provide sufficient standards to prevent arbitrary or discriminatory enforcement." State v. Baumgartner , 8th Dist. Cuyahoga Nos. 89190, 91027, and 91028, 2009-Ohio-624, 2009 WL 344988, ¶ 42, citing State v. Williams , 88 Ohio St.3d 513, 2000-Ohio-428, 728 N.E.2d 342.
{¶ 20} "The void-for-vagueness doctrine does not require statutes to be drafted with scientific precision." (Citation omitted.) Perez v. Cleveland , 78 Ohio St.3d 376, 378, 678 N.E.2d 537 (1997). "Instead, it permits a statute's certainty to be ascertained by application of commonly accepted tools of judicial construction, with courts indulging every reasonable interpretation in favor of finding the statute constitutional." (Citation omitted.) Id. at 378-379, 678 N.E.2d 537. The person challenging the statute bears the burden of showing that, upon examination of the statute, a person of ordinary intelligence would be unable to understand what the law requires of him or her. State v. Schneider , 9th Dist. Medina No. 06CA0072-M, 2007-Ohio-2553, 2007 WL 1531414, ¶ 6, citing State v. Anderson , 57 Ohio St.3d 168, 171, 566 N.E.2d 1224 (1991).
*329 {¶ 21} R.C. 2953.71(G) defines "exclusion" or "exclusion result" to mean
a result of DNA testing that scientifically precludes or forecloses the subject offender as a contributor of biological material recovered from the crime scene or victim in question, in relation to the offense for which the offender is an eligible offender and for which the sentence of death or prison term was imposed upon the offender.
"Outcome determinative" means that
had the results of DNA testing of the subject offender been presented at the trial of the subject offender and been found relevant and admissible with respect to the felony offense for which the offender is an eligible offender and is requesting the DNA testing, and had those results been analyzed in the context of and upon consideration of all available admissible evidence related to the offender's case as described in division (D) of section 2953.74 of the Revised Code, there is a strong probability that no reasonable factfinder would have found the offender guilty of that offense * * *.
R.C. 2953.71(L).
{¶ 22} In State v. Waire , 1st Dist. Hamilton No. C-040782, 2005-Ohio-4853, 2005 WL 2248924, the court explained that in order for DNA-testing results to be "exclusive" for purposes of R.C. 2953.71 et seq., the results had to preclude the inmate as the contributor of the biological material recovered from the crime scene or victim. The First Appellate District, discussing a former, but similar version of R.C. 2953.71, explained that a trial court may "accept" the application only if the DNA-testing results are "exclusive" and the court determines that the results are "outcome determinative." Waire at ¶ 4 ; R.C. 2953.74(B) and (C)(4). DNA-testing results are "exclusive" if they scientifically preclude or foreclose the subject offender as a contributor of biological material recovered from the crime scene or victim. Waire at id. , citing former R.C. 2953.71(G). "Exclusive" results are "outcome determinative" if, had the results been presented at the offender's trial and been found relevant and admissible, no reasonable factfinder would have found the offender guilty of that offense. Waire at id. , citing former R.C. 2953.71(L).
{¶ 23} Thus, in reading the terms "exclusion," "exclusion result," and "outcome determinative," we find that the statute contains ascertainable standards, provides sufficient notice of what the terms apply to, and contains sufficient guidelines to avoid arbitrary or discriminatory enforcement.
{¶ 24} In light of the above, the terms "exclusion" and "exclusion result" in relation to the term "outcome determinative" are not unconstitutionally vague.
{¶ 25} Williamson also claims that the trial court's application of R.C. 2953.71 et seq. violates his equal protection rights. The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution provides, "No State shall * * * deny to any person within its jurisdiction the equal protection of the laws." Ohio's Equal Protection Clause, Section 2, Article I of the Ohio Constitution, states, "All political power is inherent in the people. Government is instituted for their equal protection and benefit * * *." These constitutional guarantees do not forbid classifications. "[They] simply keep[ ] governmental decision makers from treating differently persons who are in all relevant respects alike." Burnett v. Motorists Mut. Ins. Co. , 118 Ohio St.3d 493, 2008-Ohio-2751, 890 N.E.2d 307, ¶ 30 ; Nordlinger v. Hahn , 505 U.S. 1, 10, 112 S.Ct. 2326, 120 L.Ed.2d 1 (1992). "Thus, the comparison *330 of only similarly situated persons or groups is integral to an equal protection analysis." Widmer at ¶ 145.
{¶ 26} Although Williamson's argument is again difficult to understand, he appears to claim that he was denied equal protection because DNA testing should be allowed on "all available admissible evidence related to the inmate's case," whether that evidence was collected at the time of the crime or not.
{¶ 27} Postconviction relief is strictly a statutory right, not a constitutional right. Widmer at ¶ 142. We fail to see how Williamson, as an offender who seeks to compare physical items that are not, and were likely never, in the state's custody or control, is similarly situated to the offenders listed in R.C. 2953.71 et seq., so as to violate the guarantees of equal protection. Simply put, Williamson seeks to have the DNA tested on two physical items, a cup and a piece of flooring, that were never collected as part of the criminal investigation but, according to Williamson, may be available 17 years after the crimes were committed. His request is far different from offenders who seek to compare their own DNA with physical items that remain in the state's possession and may otherwise qualify under R.C. 2953.74(C).
{¶ 28} The Equal Protection Clause "does not require things which are different in fact * * * to be treated in law as though they were the same." GTE N., Inc. v. Zaino , 96 Ohio St.3d 9, 2002-Ohio-2984, 770 N.E.2d 65, ¶ 22, citing Tigner v. Texas , 310 U.S. 141, 147, 60 S.Ct. 879, 84 L.Ed. 1124 (1940).
{¶ 29} We find that Williamson's claims are without merit.
{¶ 30} The sixth assignment of error is overruled.
{¶ 31} The trial court did not err in denying Williamson's application for DNA testing and R.C. 2953.71 et seq. does not violate Williamson's due process or equal protection rights. Accordingly, judgment is affirmed.
EILEEN T. GALLAGHER, P.J., and ANITA LASTER MAYS, J., CONCUR

Neiswonger was a homeless person Williamson alleged committed the rapes.

R.C. 2953.75(B) states: "The prosecuting attorney shall prepare a report that contains the prosecuting attorney's determinations made under division (A) of this section and shall file a copy of the report with the court and provide a copy to the eligible offender and the attorney general."