[Cite as *State v. Riley*, 2026-Ohio-1453.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,          :

    v.                                        :

MICHAEL RILEY,                         :

    Defendant-Appellant.      :

No. 115512

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** April 23, 2026

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-16-608045-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Kristen Hatcher, Assistant Prosecuting Attorney, *for appellee.*

Patituce & Associates, LLC, Megan M. Patituce, and Joseph C. Patituce, *for appellant.*

SEAN C. GALLAGHER, J.:

{¶ 1} Michael Riley appeals the denial of his application for postconviction DNA testing, in which he claims advances in DNA collection techniques could lead

to the detection of DNA material that would have been outcome determinative had it been available at trial.  For the following reasons, we affirm.

{¶ 2} This postconviction proceeding has a long history despite a preliminary issue with Riley's 2022 application for the State to conduct postconviction DNA testing — his implicit concession that no parent sample exists. The existence of a parent sample of biological material, material containing human DNA, is a statutory prerequisite to the trial court's accepting an application for postconviction DNA testing under R.C. 2953.74(C)(1).  Riley's concession is dispositive.

{¶ 3} In 2016, Riley was indicted on charges of aggravated murder, felony murder, attempted murder, four counts of felonious assault, discharge of a firearm on or near prohibited premises, improperly handling a firearm in a motor vehicle, and having a weapon while under a disability.  The charges arose from a drive-by shooting in which a person wearing unique clothing that enabled witnesses to identify Riley entered the back seat on the driver's side of a vehicle, all of which was recorded on surveillance cameras.  The video depicted shots being fired from the window of the door Riley entered. *State v. Riley*, 2024-Ohio-5712, ¶ 2, citing *State v. Riley*, 2019-Ohio-981, ¶ 3 (8th Dist.).  The shots struck and killed Juan Mitchell and injured another.  The trial court sitting as the trier of fact "found Riley not guilty of aggravated murder because, according to the trial court, the identity of the person who had fired the gun or guns from the car could not be determined."  *Id*. at ¶ 2, citing *Riley*, 2019-Ohio-981, at ¶ 38.  The trial court expressly found Riley complicit

in the remaining offenses and sentenced him to an aggregate prison term of 26 years to life. *Id.*

{¶ 4} As part of his postconviction challenges, Riley filed an application for DNA testing under R.C. 2953.71 to 2953.81 seeking to retest the shell casings collected during the investigation of Riley's crimes. According to Riley's application, "[i]n the past, obtaining useful DNA off shell casings was almost always unsuccessful because the testing standards were not sensitive enough to capture the small amount of touch DNA present." Citing a professional article published in 2016, Riley argued that there could still be touch DNA present on the shell casings, uncollected by the forensic examiner who collected the original samples from the shell casings. *See* Jim Dawson, *Who Loaded the Gun? Recovering DNA from Bullet Casings*, Forensics Magazine (August 2016), https://njj.ojp.gov/topics/articles/who-loaded-gun-recovering-dna-bullet-casings (accessed Mar. 31, 2026) [available at https://perma.cc/JML7-2PWG]. The trial court denied the application, but before it could issue findings, Riley perfected an appeal. The panel affirmed the denial of the application after accepting the trial court's belated findings, concluding that the DNA testing would not be outcome determinative. Notwithstanding, the Ohio Supreme Court reversed with three justices claiming it was error for the trial court to accept the State's proposed findings, three justices claiming the appellate court erred by considering the appeal filed before the findings were made by the trial court, and one justice in favor of dismissing the appeal as improvidently allowed. *See generally Riley*, 2024-Ohio-5712.

{¶ 5} As the Ohio Supreme Court recognized in the earlier appeal of the postconviction DNA testing application, this matter arises from Riley's "application seeking DNA testing of six shell casings discovered at the scene of the shooting." *Id.* at ¶ 4. As noted in the application, however, the lab testing conducted before trial "detected an 'insufficient quantity of human DNA' on the swabs collected from the outer surface of the casings." *Id.* "Riley argued in his application that 'advancements in DNA testing technology not available' at the time of his trial made it possible to test the casings again and yield a result that would exclude him as the shooter or establish who the shooter was." *Id.* In other words, according to Riley, the State's forensic examiner could collect a new sample of biological material from the shell casings for further testing. This request is outside the realm of testing permitted under R.C. 2953.74(C)(1) when that language is applied as written.

{¶ 6} "A court may accept an R.C. 2953.73 application for DNA testing only if it determines that six conditions apply, [one] of which [is] central to this appeal. . . . [T]he court must determine that biological material was collected from the crime scene or the victim and that the parent sample still exists." *State v. Bonnell*, 2018-Ohio-4069, ¶ 19, citing R.C. 2953.74(C)(1). In his application for DNA testing, Riley claimed it was possible to collect new biological material from the bullet casings secured during the investigation based on advancements in forensic collection techniques. As the State argued in the hearing conducted on remand, in order for the trial court to accept an application for postconviction DNA testing under R.C. 2953.74(C)(1), however, the court must determine that

biological material was both collected from the crime scene (or victim) for the offense at issue and that parent sample still exists. *See Riley*, 2024-Ohio-5712, ¶ 12 ("It is axiomatic that there must be some proper biological material to test."). If no parent sample exists, the trial court may not accept the application. *Bonnell* at ¶ 19.

{¶ 7} "Parent sample" is defined as "biological material first obtained from a crime scene or a victim of an offense for which an offender is an eligible offender, and from which a sample will be presently taken to do a DNA comparison to the DNA of the subject offender under sections 2953.71 to 2953.81 of the Revised Code." The phrase "biological material" expressly means "any product of a human body containing DNA." "Biological material may include blood, semen, hair, saliva, and skin tissue." *State v. Warren*, 2022-Ohio-4743, ¶ 13 (2d Dist.), citing R.C. 2933.82(A)(1)(a)(ii). The "collection of a shell casing does not necessarily establish the collection of biological material." *Id.* The collection and retention of a parent sample of biological material from an item must exist at the time of the application. R.C. 2953.74(C)(1). Collecting new biological material from tangible objects like shell casings does not fall under the definition of what constitutes an existing parent sample of "biological material."

{¶ 8} As the Ohio Supreme Court also recognized in an earlier appeal, the State's argument has been steadfast: "the swabs collected from the six shell casings had been consumed during the lab testing and therefore could not be tested again." *Riley*, 2024-Ohio-5712, at ¶ 5. Riley does not contend and, in fact, has never claimed otherwise, leading the trial court to the conclusion that the original

samples of biological material collected no longer existed. As Riley stated in his application and later clarified in the proceedings following the remand from the Ohio Supreme Court, he is not seeking a DNA test on a sample taken from the parent sample currently in existence. Instead, he is requesting the State's forensic examiner to generate a new sample of biological material by attempting to collect additional biological material from the shell casings held in evidence. Tr. 41:20-42:7. Riley's request does not adhere to the limitations of R.C. 2953.74(C)(1).

{¶ 9} Riley's argument is based on the tacit concession that no parent sample exists, and he is expressly seeking the collection of an additional sample of biological material retrieved from tangible evidence for further testing.[1] If such a request is permitted, it is not through the statutory procedure outlined in R.C. 2953.71 to 2953.81, under which this case proceeded to force the State to conduct additional DNA testing. *See* R.C. 2953.84 ("[S]ections 2953.71 to 2953.81 of the Revised Code . . . are not the exclusive means by which an offender may obtain postconviction DNA testing, and the provisions of those sections do not limit or affect any other means by which an offender may obtain postconviction DNA testing.").

{¶ 10} Riley's argument primarily focused on the State forensically obtaining a new sample of biological material from the shell casings and from which

---

[1] The State presented this argument to the trial court at the hearing conducted on remand from the Ohio Supreme Court. Tr. 44:9-22.

further DNA testing could occur.[2]  He is not requesting the State to test a sample taken from a parent sample as statutorily defined.[3]  His claim is limited to advances in collecting the biological material from shell casings, and as a result of this distinction, Riley's application was fatally flawed.  Under R.C. 2953.74(C)(1), the trial court was unable to do anything but reject the application based on Riley's argument and the information submitted along with the application.  *State v. Marshall*, 2025-Ohio-3132, ¶ 11 (1st Dist.) ("If any of the factors listed in R.C. 2953.74(C) are not satisfied, the court is precluded from accepting the application."), quoting *State v. Emerick*, 2007-Ohio-1334, ¶ 15 (2d Dist.), *overruled in part on other grounds by State v. Wilson*, 2024-Ohio-4712 (2d Dist.), and R.C. 2953.74(C); *see also State v. Williamson*, 2018-Ohio-2226, ¶ 10 (8th Dist.) (concluding no parent sample existed and therefore the trial court did not err in denying the postconviction application for DNA testing).  By seeking the collection of new biological material from the shell casings, Riley is implicitly conceding that

---

[2] Although the trial court concluded that a parent sample existed in paragraph 20 of the findings of facts and conclusions of law, that conclusion is irrelevant to Riley's only request, which seeks new testing samples be collected from the shell casings.  The trial court's statements referred to the original samples that contained insufficient biological material for further testing.  Riley is not asking for any additional testing of those samples but instead seeks that new samples be preserved from the shell casings directly.

[3] It should be noted that the analysis surrounding advances in DNA testing pertains to whether a "definitive DNA test" occurred in the trial proceeding.  A "definitive DNA test means a DNA test that clearly establishes that biological material from the perpetrator of the crime was recovered from the crime scene and also clearly establishes whether or not the biological material is that of the eligible offender."  Because there was no "definitive DNA test" in this case, Riley's discussion regarding R.C. 2953.71(U) is not relevant to the analysis.

no parent sample exists for the purposes of R.C. 2953.74(C)(1). If there is relief to be had, it is not through R.C. 2953.71 to 2953.81 as this case has been presented.

{¶ 11} Accordingly, any arguments pertaining to whether the requested DNA testing would be outcome determinative are moot.[4] In light of our conclusion that no parent sample exists under R.C. 2953.74(C)(1), it cannot be determined that the trial court erred in concluding that a scientifically sufficient amount of material does not exist from which a test sample could be extracted under subdivision (C)(2). The absence of a parent sample necessarily means that there is insufficient material under (C)(2). The decision of the trial court denying the application for DNA testing is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

---

[4] Even if the issue was not moot, the panel's conclusion that the postconviction DNA would not be outcome determinative because Riley was found guilty of complicity and not implicated as the shooter, still holds true. *State v. Riley*, 2023-Ohio-2588, ¶ 48 (8th Dist.). The Ohio Supreme Court's decision reversing the panel decision rested on procedural grounds, not as to the merits of that conclusion. *See generally Riley*, 2024-Ohio-5712.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
SEAN C. GALLAGHER, JUDGE

EMANUELLA D. GROVES, P.J., and
MARY J. BOYLE, J., CONCUR